**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROGER MARK SCOTT,
          *Petitioner-Appellant,*

v.

DORA B. SCHRIRO,
          *Respondent-Appellee.*

No. 05-99012

D.C. No.
CV-97-01554-PGR

OPINION

Appeal from the United States District Court
for the District of Arizona
Paul G. Rosenblatt, District Judge, Presiding

Argued and Submitted
July 15, 2008—San Francisco, California

Filed June 2, 2009

Before: Alex Kozinski, Chief Judge, Jerome Farris and
Carlos T. Bea, Circuit Judges.

Per Curiam Opinion

## COUNSEL

Jon M. Sands, Michael L. Burke, Jennifer Y. Garcia, Federal Public Defender's Office, Phoenix, Arizona, for the petitioner-appellant.

Terry Goddard, Kent Cattani, J.D. Nielsen, Office of the Attorney General of Arizona, Capital Litigation Section, Phoenix, Arizona, for the respondents-appellees.

---

**OPINION**

PER CURIAM:

Roger Scott, an Arizona state prisoner sentenced to death, appeals the denial of his petition for a writ of habeas corpus in federal district court. When a state prisoner files such a petition, the district court will usually not hear any claim the petitioner did not first present to the state courts. This process is referred to as the prisoner "exhausting" his state remedies. Nor will the district court decide a claim denied by a state court because the petitioner failed to follow a rule of state procedure that is both adequate and independent of federal law. To be considered "adequate," the state rule must be one that is consistently applied by the courts of that state in the same manner it was applied to the current petitioner's case.

The dispositive issue in this case is whether the Arizona Superior Court relied on an adequate state bar, consistently applied, by the Arizona courts when it denied Scott's state petition for post-conviction relief. We conclude it did not. It held Arizona Rule of Criminal Procedure 32.6(d) ("Rule 32.6(d)") prohibited Scott from filing an amendment to his previously-dismissed Arizona post-conviction petition for relief. His amendment alleged Scott had suffered ineffective assistance of counsel at his trial. In doing so, the post-conviction court ignored Arizona precedent holding such a petition could be so amended. *See State v. Rodriguez*, 903 P.2d 639, 641 (Ariz. Ct. App. 1995) (holding a post-conviction court has the authority under Rule 32.6(d) to allow the filing of an amended petition upon a showing of good cause, even after the court has already dismissed the first peti-

tion). Scott's first petition for post-conviction relief was filed in 1995. Accordingly, the amended Rule 32.6(d) was not an "adequate" state procedural rule that barred subsequent federal review of Scott's ineffective assistance of counsel claims. We will remand those claims for the district court to consider in the first instance.

We reverse the district court's denial of Scott's petition in part and remand to the district court to hold an evidentiary hearing and rule on the merits of these claims. We affirm the district court's ruling that Scott was not prejudiced solely by his counsel's failure to present a recommendation for leniency from the victim's father as mitigation evidence. Nevertheless, on remand the district court should hold an evidentiary hearing and consider whether the failure to present such a recommendation from the victim's father, combined with the failure of Scott's counsel to submit other mitigating evidence as discussed below, resulted in prejudice.

## I.   Facts and Procedural History

This case stems from the premeditated murder of a four-year-old named Christopher Milke. Christopher's mother, Debra Milke, her roommate James Styers, and Styers's friend, Roger Scott, were each tried separately for first-degree murder, conspiracy to commit murder, kidnapping, and child abuse. All were convicted.

At Scott's trial, he was represented by Roland Steinle. The State's theory of the case was that Scott, Styers, and Debra Milke planned to kill Christopher to claim $5,000 from a life insurance policy covering Christopher, which Debra had taken out through her work. Scott was to receive $250. Scott testified during trial that he was only a dupe, lured into helping his friend Styers after the fact. However, Scott had given a full confession to the police of his own role in the planning and execution of the kidnapping and murder of Christopher. Scott confessed he drove with Styers and Christopher out into

the desert, where Styers shot Christopher. Scott led the police to Christopher's body, the firearm used to kill Christopher (which was in Scott's closet), and a pair of bloody shoes worn by Styers when he shot Christopher.[1]

After a jury trial, Scott was found guilty of first-degree murder, conspiracy to commit murder, and kidnapping.[2] The relevant facts of the case are set forth in the Arizona Supreme Court's opinion affirming Scott's conviction. *State v. Scott*, 865 P.2d 792, 795-96 (Ariz. 1993). The details of the facts supporting the underlying conviction, horrible as they are, are not important for purposes of this appeal. Scott does not contest his conviction; he contests only his sentence.

Scott received the death penalty for the first-degree murder charge, and consecutive terms of imprisonment totaling 47 years-to-life for the conspiracy and kidnapping charges. When sentencing Scott, the trial judge found three statutory aggravating factors:[3] (1) Scott committed the murder as an accomplice for pecuniary gain; (2) the murder was "heinous" and "depraved" because it was a senseless murder and the victim was helpless; and (3) Scott was an adult and the victim was under the age of fifteen. Ariz. Rev. Stat. § 13-703(F)(5), (6),

---

[1]Because the defendants were each tried separately, we caution that the facts recited herein relate only to the trial of Scott, and must not be considered by us or by other courts in the cases against James Styers and Debra Milke.

[2]Scott was also convicted of child abuse, but that conviction was overturned by the Arizona Supreme Court on direct appeal.

[3]Under Arizona law as it existed at that time, the trial judge, not the jury, determined whether aggravating circumstances existed. While this fact might have been a ground for a successful appeal under *Blakely v. Washington*, 542 U.S. 296 (2004)—indeed Scott's counsel raised the issue on direct appeal—*Blakely* does not apply retroactively to cases on collateral review. *Schardt v. Payne*, 414 F.3d 1025, 1036 (9th Cir. 2005). Similarly, this would have been a valid claim under *Ring v. Arizona*, 536 U.S. 584 (2002), but *Ring* also does not apply retroactively to cases on collateral review. *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004). Scott was tried and convicted in 1991.

(9). The court also found four non-statutory mitigating circumstances: (1) Scott's cooperation with the police in investigating the crime; (2) his conduct while incarcerated and during trial; (3) his "bond of love" with his mother; and (4) his psychological history. However, the judge concluded these mitigating factors did not outweigh the aggravating factors and imposed the death penalty.

Scott's conviction and sentence were affirmed on direct appeal to the Arizona Supreme Court. *Scott*, 865 P.2d at 806. That court found one additional mitigating factor: Scott's lack of any prior felony convictions. *Id.* After adding this additional factor to the mitigating factors found by the trial court, the Arizona Supreme Court held the aggravating factors still carried more weight and affirmed Scott's death sentence. *Id.* This procedure of re-weighing the evidence is allowed under Arizona law. *See State v. Gallegos*, 870 P.2d 1097, 1117-18 (Ariz. 1994).

During the Arizona post-conviction proceedings, Neil Bassett initially represented Scott. Pursuant to Arizona law at the time, the post-conviction court was the same Superior Court where Scott's trial was held. The same judge heard the proceedings. Bassett raised a single issue: whether Scott's trial counsel, Steinle, rendered ineffective assistance of counsel by his failure to submit proper proof of the victim's father's recommendation for leniency at sentencing.

Prior to its decision, Scott had written the Arizona post-conviction court repeatedly, seeking to have the court replace Bassett with new counsel. He told the court Bassett refused to communicate with him. Scott even wrote the court, stating he had fired Bassett. The court ignored Scott's letters and did not hold a hearing to determine whether Scott was seeking to represent himself or whether new counsel should be appointed. Instead, the court summarily denied the petition for post-conviction relief in a minute order. Scott then filed a formal motion to represent himself, and Bassett filed a motion to

withdraw and to allow new counsel an extension of time to file a motion for rehearing or other filing. The court granted Scott's motion for an extension of time and appointed new counsel, Rachel Yosha.

The court gave Yosha 30 days, plus one extension, to make her first filing in the case. Within the time allowed, Yosha filed motions to vacate the denial of the petition for post-conviction relief and for leave to file an amended petition raising 23 additional claims. As good cause for Scott's failure to file all his proposed claims in his first petition, Yosha argued Scott's previous counsel, Bassett, had been ineffective —a claim accepted by the post-conviction court when it granted the motion for new counsel.

Among the proposed claims in the amendment to his petition for post-conviction relief were claims that Scott's trial counsel, Steinle, provided Scott ineffective assistance of counsel when Steinle failed to accept a plea bargain offer for second-degree murder, even though Scott said he wanted to accept the offer, and even though Steinle recognized the offer was "the only viable way [for Scott] to avoid the death penalty" given his confession. Rather than plead guilty to second-degree murder, Scott went to trial and was found guilty of first-degree murder, as his confession meant he would be. At sentencing, Steinle also failed to present several mitigating circumstances, including evidence of four traumatic head injuries Scott had suffered, a brain scan showing Scott's brain had atrophied, evidence Scott suffered from seizures, as well as evidence of the plea bargain offer, which Scott wanted to accept but Steinle rejected.

The motions filed by Yosha contained the legal and factual bases for each claim Scott wished to make in the post-conviction petition for relief. The post-conviction court denied the motions, holding it had "no authority" under Arizona Rule of Criminal Procedure 32.6(d) to allow the filing

of an amended petition because the motion was filed after the original petition had been denied.

Following the post-conviction court's denial, Scott filed a petition for review with the Arizona Supreme Court seeking review of denial of his petition for post-conviction relief and the denial of his motion to amend his petition.[4] Yosha attached the proposed amended petition in the appendix to Scott's brief.[5] The amended petition contained the 23 additional claims Scott sought to bring. The Arizona Supreme Court summarily denied the petition without comment.

Scott then filed a timely pro se petition for writ of habeas corpus in federal court. He was appointed new counsel, who filed an amended petition, raising many of the claims Scott had raised both on direct appeal and in his amended petition for post-conviction relief to the state courts. The district court held the only claim Scott had exhausted in state court was the one ruled on by the state post-conviction court on the merits —that failure to present a recommendation for leniency by the victim's father, Mark Milke, constituted ineffective assistance of counsel. The district court denied this claim on the merits. The court held Scott's other proposed claims, including his ineffective assistance of counsel claims, were procedurally barred from federal review because: (1) the state's denial of post-conviction relief was based on an adequate and independent rule of state procedure; and (2) the claims stated in the proposed petition for post-conviction relief had not been fairly presented to the state courts, and thus they were not "exhausted" in state court.

---

[4]Under Arizona law, cases involving a capital offense are appealed directly to the Arizona Supreme Court, bypassing the Arizona Court of Appeal. Ariz. R. Crim. P. 31.2(b).

[5]In relevant part, Arizona Rule of Criminal Procedure Rule 32.9(c)(1)(iv) provides that in petitions for review in capital cases, "all references to the record in the trial court shall be supported by an appendix, with appropriate copies of the portions of the record which support the petition."

On appeal to this court, Scott contends the district court erred when it held the following three additional ineffective assistance of counsel claims were procedurally barred from federal review: (1) Steinle rendered ineffective assistance of counsel because he failed to challenge the voluntariness of Scott's statements to the police; (2) Steinle rendered ineffective assistance of counsel because he did not investigate and present mitigating evidence of Scott's mental deficiencies during the sentencing phase; and (3) appellate counsel rendered ineffective assistance of counsel because he failed to challenge the trial court's finding Scott committed the crime for pecuniary gain.

## II.  Analysis

We review *de novo* a district court's dismissal of a habeas petition for procedural default based on a finding that: (1) the state court's denial of relief was based on adequate and independent state rule of procedure or (2) the petitioner failed to exhaust the claims in state court. *Insyxiengmay v. Morgan*, 403 F.3d 657, 665 (9th Cir. 2005).

### A.  Procedural Default

#### 1.  Adequate and Independent State Procedural Bar

**[1]** Normally, a habeas petitioner carries the burden on appeal. Sometimes, however, the burden rests with the state. "Procedural default is an affirmative defense, and *the state has the burden* of showing that the default constitutes an adequate and independent ground" for denying relief. *Insyxiengmay*, 403 F.3d at 665 (emphasis added). Once the state meets that burden of proof, the burden on all remaining issues shifts to the petitioner.

**[2]** To constitute an adequate and independent state procedural ground sufficient to support a state court's finding of procedural default, "a state rule must be *clear, consistently*

*applied, and well-established at the time* of petitioner's purported default." *Lambright v. Stewart*, 241 F.3d 1201, 1203 (9th Cir. 2001) (citations omitted) (emphasis added). A state rule is considered consistently applied and well-established if the state courts follow it in the "vast majority of cases." *See Dugger v. Adams,* 489 U.S. 401, 411 n.6 (1989). We find the State has not met its burden to prove the rule cited and relied upon by the Arizona post-conviction court—Arizona Rule of Criminal Procedure 32.6(d)—was clear, consistently applied, and well-established at the time the post-conviction court applied it to Scott's case.

The basis for the state court's order denying Scott's motions to vacate the denial of the first petition and allow the filing of an amended petition raising new grounds for relief was as follows:

> There is little doubt that this Court is Authorized [sic], upon a showing of good cause, to permit a defendant to amend a petition for post-conviction relief *before* a dispositive order issues. *See* Rule 32.6(d), A.R.Crim. P. Here, however, Defendant seeks an order vacating this Court's order dismissing his Petition for Post-Conviction Relief. . . . To grant the relief requested by Defendant would be contrary to the underlying purpose of Rule 32 and inconsistent with its procedures.

**[3]** This language implies the court thought that, regardless whether Scott had shown good cause to excuse his failure to plead all his claims in his first petition for post-conviction relief, the court simply did not have authority to allow amendment to the petition because it was amended after the court had already denied his first petition. This conclusion is contrary to the plain language of Rule 32.6(d), which at the time of Scott's post-conviction proceeding read:

> After the filing of a post-conviction relief petition, no amendments shall be permitted *except by leave of court upon a showing of good cause*.

Ariz. R. Crim. P. 32.6(d) (1996) (emphasis added). The only condition to amendment of a filed petition is the existence of good cause. Whether a court has or has not ruled on the original petition is not mentioned as a condition to amendment.

**[4]** The post-conviction relief judge conducted no analysis as to whether Scott had shown good cause to amend his petition. Rather, it appears the judge relied on an earlier version of Rule 32.6(d), which prohibited a post-conviction court from allowing the filing of an amended petition after the first petition had been dismissed. Before 1992, Rule 32.6(d) read, "Amendments to pleadings shall be liberally allowed at all stages of the proceeding *prior to entry of judgment*." Ariz. R. Crim. P. 32.6(d) (1991) (emphasis added).[6] The emphasized language from this prior version of the rule, restricting amendments to the time period "prior to entry of judgment," was deleted by the legislature in 1992. Scott filed his proposed amendment in 1996.

The Arizona courts have not consistently interpreted the 1996 version of Rule 32.6(d) to prohibit amended or supplemental petitions for post-conviction relief when such amendments or supplements are filed after the denial of the first petition. To the contrary, before the post-conviction court's ruling in this case but after Rule 32.6(d) was amended in 1992, the Arizona Court of Appeals ruled in 1995 that a post-conviction court *has* the authority to allow the filing of an

---

[6] Arizona courts continue to construe Rule 32.6(d) as liberally allowing amendments, even though this language was also deleted in the 1992 revisions. *See Canion v. Cole*, 115 P.3d 1261, 1264 (Ariz. 2005) (holding "Rule 32.6(d), which permits a defendant to amend his petition 'upon a showing of good cause,' adopts a liberal policy toward amendment of [post-conviction relief] pleadings.").

amended petition upon a showing of good cause, even if the court has already dismissed the original petition. *See Rodriguez*, 903 P.2d at 640-41 (holding that good cause was shown under Rule 32.6 where a petitioner sought to file a petition pro se *after* the post-conviction court dismissed his first petition because his post-conviction counsel failed to file the necessary brief explaining is claims in a timely manner). Thus, *Rodriguez*, the only published case that had interpreted Rule 32.6(d) after the 1992 amendment but before Scott's proceeding in 1996, was contrary to the post-conviction court's ruling in this case.[7]

The *Rodriguez* case shows the post-conviction court did not rely on a rule of state procedure that is regularly followed or "consistently applied" by the Arizona state courts. As this court has held, "federal courts should not insist upon a petitioner, as a procedural prerequisite to obtaining federal relief, complying with a rule the state itself does not consistently enforce." *Siripongs v. Calderon*, 35 F.3d 1308, 1318 (9th Cir. 1994).

**[5]** Thus, given that neither the text of the 1992 version of Rule 32.6(d) nor any case construing that version of the rule state that a post-conviction court cannot grant a motion to amend the petition after the original petition has been dismissed, the state has not met its burden of proving Rule 32.6(d) is consistently interpreted as it was interpreted here. Accordingly, the district court erred in holding that Rule 32.6(d) constitutes an adequate and independent state proce-

---

[7]Because the relevant inquiry is whether the rule was well-established or consistently applied "at the time of [the] alleged default to bar federal review," cases decided after the purported procedural default normally should normally not be considered. *See Lambright*, 241 F.3d at 1203, n.2. Nevertheless, we note that after Scott's trial, the Arizona Supreme Court followed the reasoning of *Rodriguez* and issued orders allowing defendants upon a showing of good cause to file amended or supplemental petitions after their first petitions had been denied. *See Arizona v. Stokley*, No. CV-97-0203-SA (1999); *Arizona v. Kayer*, No. CR-94-0694 (1998).

dural bar to federal review on the merits and failing to rule on the merits of the proposed claims.

### 2. *Exhaustion*

**[6]** The district court held Scott did not exhaust his claims of ineffective assistance of counsel because he failed to present those claims to the Arizona courts. A federal court may not grant habeas relief to a state prisoner unless the prisoner has first exhausted his state court remedies. *See* 28 U.S.C. § 2254(b)(1). A petitioner satisfies the exhaustion requirement by fully and fairly presenting each claim to the highest state court. *See Insyxiengmay*, 403 F.3d at 668. A petitioner fully and fairly presents a claim to the state courts if he presents the claim (1) to the correct forum, *see* § 2254(c); (2) through the proper vehicle, *see Castille v. Peoples*, 489 U.S. 346, 351 (1989); and (3) by providing the factual and legal basis for the claim, *see Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999). Full and fair presentation additionally requires a petitioner to present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief. *See Picard v. Connor*, 404 U.S. 270, 278 (1971).

Scott included his ineffective assistance of counsel claims in the appendix of his petition for review to the Arizona Supreme Court. He explicitly referenced his right to effective assistance of counsel under the Sixth Amendment of the United States Constitution. He also stated the operative facts on which each of the claims were based and cited federal case law to support his arguments. The only issue the state contests is whether including the claims in an appendix in a petition for review to the Arizona Supreme Court satisfied the fair presentation requirement for purposes of exhaustion. This is an issue of federal law, not state law. We hold Scott did accomplish a full and fair presentation of his claims to the Arizona Supreme Court. Scott included a copy of the amended petition for post-conviction relief he sought to file in the post-

conviction court in the Appendix to his petition for review filed with the Arizona Supreme Court.

**[7]** This case is indistinguishable from *Insyxiengmay*, which held that presentation of an issue in an appendix is sufficient to present the issue in a full and fair manner to the state courts.[8] *See Insyxiengmay,* 403 F.3d at 668. Indeed, it is questionable whether the claims even needed to be presented in the appendix to preserve them. As the *Insyxiengmay* court noted,

> [W]e question whether in order to exhaust the three claims it was even necessary for Insyxiengmay to file an appendix with the Washington Supreme Court . . . . Because in his motion Insyxiengmay asked the Washington Supreme Court to allow the claims to proceed in the court of appeals, and the court declined the request, thus barring him from presenting the claims for review either to the court of appeals or the supreme court, any further duty to exhaust was excused.

*Insyxiengmay*, 403 F.3d at 669 n.5.

Similarly, Scott petitioned the Arizona Supreme Court to allow his claims to proceed in the post-conviction court and he gave the court a copy of the amended petition he sought to file, which included the operative facts and law. Thus, the Arizona Supreme Court knew exactly which claims Scott sought to present. The Arizona Supreme Court denied the request, "thus barring him from presenting the claims for review either to the [post-conviction court] or the supreme court." *See id.* Therefore, any further duty Scott had to exhaust was excused.

---

[8]The State argues *Insyxiengmay* is distinguishable because the decision is based on Washington law but neither Arizona case law nor statutes hold that issues are waived in post-conviction proceedings if they are raised only in an appendix to a petition for review.

**[8]** All exhaustion requires is that the state courts have the opportunity to remedy an error, not that they actually took advantage of the opportunity. *See Picard v. Connor*, 404 U.S. 270, 275 (1971). Accordingly, Scott exhausted his state remedies with respect to the claims he sought to bring in his amended petition for post-conviction relief.

**[9]** We thus conclude Scott's claims are not procedurally barred from federal review.

### 3.   *Proceedings on Remand*

**[10]** "Where a petitioner raises a colorable claim [to relief], and where there has not been a state or federal hearing on this claim, we must remand to the district court for an evidentiary hearing." *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001) (quoting *Smith v. McCormick*, 914 F.2d 1153, 1170 (9th Cir. 1990)).

**[11]** The most serious claim Scott brings is ineffective assistance of counsel for failure to present mitigating evidence of his mental deficiencies at his sentencing hearing. The record reflects Steinle, the State, and the trial judge all knew Scott claimed he had "brain shrinkage" caused by several traumatic brain injuries, including a bicycle accident in seventh grade with a car, two motorcycle accidents, and a car accident, all of which had rendered Scott temporarily unconscious. In fact, Steinle had used Scott's claim of brain shrinkage as grounds for requesting a pre-trial competency evaluation ordered by the court. There is no evidence, however, Steinle independently investigated these claims to present them as mitigating evidence in the penalty phase of the trial.

In *Summerlin v. Schriro*, 427 F.3d 623, 631 (9th Cir. 2005), this court granted an Arizona state petitioner's habeas petition. Summerlin's attorney never investigated or developed evidence of Summerlin's mental health history for presenta-

tion at the penalty phase of his capital trial, even though counsel knew he had been diagnosed with paranoid schizophrenia and treated with anti-psychotic medication. In *Summerlin*, as here, "[t]he strong psychiatric evidence of Summerlin's lack of impulse and emotional control and *organic brain dysfunction* could have provided significant mitigating evidence." *Id.* at 641 (emphasis added).

As indicated by the 2006 report ordered by Scott's federal habeas attorneys, investigation would have revealed a computer tomography ("CT") scan demonstrating Scott had organic brain damage. Scott's organic brain injury is also described in a psychiatric evaluation ordered by his federal habeas attorneys in 1996. The report states a CT scan performed in 1987 showed the presence of brain atrophy unusual for a person of Scott's age at the time, and Dr. Don, the psychiatrist, linked this brain damage to a likelihood that Scott was more easily influenced by Styers than would have been a normal person.

**[12]** Additionally, for several years Scott was a severe alcoholic, drinking two fifths of whiskey every day—which may also have contributed to cognitive problems. The trial court refused to consider Scott's alcoholism as a mitigating factor because it was a voluntary act. This is contrary to Arizona law. "Voluntary intoxication or substance abuse can be a mitigating factor. . . . Intelligence also has been considered as part of determining whether a head injury caused damage sufficient to warrant consideration as a mitigating factor." *State v. Kayer*, 984 P.2d 31, 45, 47 (Ariz. 1999) (citing *State v. Stokley,* 898 P.2d 454, 469 (1995)). Certainly Scott's traumatic head injuries should have been, at the very least, investigated by Steinle in preparation for the presentation of Scott's penalty-phase case by ordering the same hospital records relied upon by the 2006 report. Such an omission by Steinle is striking.

It is also clear from the record that the State made a plea offer to Scott before trial. According to Steinle's affidavit,

"[t]he state of Arizona indicated that if Mr. Scott agreed to testify and was truthful in his testimony he could plead guilty to second-degree murder." However, according to Steinle's affidavit, Steinle rejected the offer because Scott would not read it, despite the fact Scott wanted to accept the offer. Regardless of the propriety of rejecting the plea offer on this basis (which is highly suspect), evidence of the plea offer could have been introduced during the sentencing phase as mitigation. *See Summerlin*, 427 F.3d at 640 (holding that evidence the prosecution offered to allow the defendant to plead guilty to second-degree murder and aggravated assault was mitigating evidence that could be admitted in the sentencing phase after the defendant had been found guilty of first-degree murder). The plea offer's mitigatory effect is clear: the prosecution thought this was not a clear-cut death penalty case. *Summerlin*, 427 F.3d at 631.

No court has weighed all of the mitigating evidence found by the trial court as well as the additional factor—lack of prior felony convictions—found by the Arizona Supreme Court against the aggravating factors found at trial. In addition, Scott raised a further claim before the Arizona Supreme Court and the district court—that his appellate attorney rendered ineffective assistance of counsel because he did not challenge the jury's finding that he committed the crime for pecuniary gain. If this claim is found to have merit, it will mean there is one less aggravating factor to weigh in the equation. Thus, it is possible that had Scott's counsel presented this additional evidence during sentencing, Scott might have received the lesser sentence of life without the possibility of parole. We remand to the district court to make that determination.

**[13]** Because Scott was never given a hearing in the state court on his ineffective assistance of counsel claims, he is entitled to a hearing in district court. *Phillips*, 267 F.3d at 973. On remand, the district court should hold an evidentiary hear-

ing to allow both parties to put on evidence regarding each of Scott's claims of ineffective assistance of counsel.

On remand, the district court should decide these issues *de novo* after an evidentiary hearing because there is no state court determination on the merits to which the district court can defer. *See Pirtle v. Morgan*, 313 F.3d 1160, 1167-68 & n.4 (9th Cir. 2002) (holding that where "there is no state court decision on this issue to which to accord deference . . . concerns about comity and federalism that arise when a state court reaches the merits of a petition for post-conviction relief do not exist [and] when it is clear that a state court has not reached the merits of a properly raised issue, we must review it de novo.").

## B. *Victim's Father's Leniency Recommendation*

Scott raises one claim that was decided on the merits in both the state court and the federal district court: whether Steinle's failure to present the victim's father's recommendation Scott be given leniency at sentencing constituted ineffective assistance of counsel in violation of the Sixth Amendment to the U.S. Constitution.

**[14]** A criminal defendant is entitled to relief for ineffective assistance of counsel when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To establish ineffective assistance, the defendant must show (1) counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," and (2) this deficient performance prejudiced the defense. *Id.* at 687. To demonstrate prejudice, the defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In an

appeal of a death sentence, it is not enough that the error may have affected the outcome; the question is whether, "absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 695. The ultimate inquiry "must be on the fundamental fairness of the proceedings whose result is being challenged." *Id.* at 696.

Because Scott filed his federal petition for writ of habeas corpus on July 25. 1997, the merits of his claim are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, "it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly." *Bell v. Cone*, 535 U.S. 685, 699 (2002). Rather, a federal court may grant habeas relief only when the state court's adjudication on the merits resulted in a decision that was "contrary to, or involved an unreasonable application of," *Strickland* or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2).

**[15]** We cannot perceive any strategic reason for Steinle's decision not to investigate or introduce any evidence that the victim's father, Mark Milke, recommended Scott not be given the death penalty. *See Correll v. Ryan*, 539 F.3d 938, 949 (9th Cir. 2008) ("An uninformed strategy is not a reasoned strategy. It is, in fact, no strategy at all."). Indeed, in an affidavit from Steinle filed during post-conviction proceedings, he does not even mention investigating Milke's recommendation that Scott be shown mercy. Nowhere in the record does Steinle provide a rationale for his decision not to introduce independent evidence of Milke's leniency recommendation.

**[16]** Because Steinle had a duty to investigate and present *all* reasonable mitigating evidence, his performance was not reasonable "under prevailing professional norms." *See Wig-*

*gins v. Smith*, 539 U.S. 510, 521 (2003); *Strickland*, 466 U.S. at 688.

It is not reasonably probable, however, that Milke's leniency recommendation would have changed Scott's sentence from death to life in prison. Milke's leniency recommendation is a non-statutory mitigating factor. *See* Ariz. Rev. Stat. § 13-703(g). As the Arizona Supreme Court has recognized, "[B]ecause a trial court has discretion in determining how much weight to give each mitigating circumstance, non-statutory mitigating circumstances might not be entitled to much weight either individually or cumulatively." *Gallegos*, 870 P.2d at 1119.

Here, the Arizona post-conviction judge who determined this error was harmless was the same judge who sentenced Scott. We know that at some point prior to imposing sentence this judge considered and rejected the victim's father's recommendation for leniency as he had read the pre-sentence report, which contained a leniency recommendation by Mark Milke. The judge must have determined the leniency recommendation did not carry much weight in light of the aggravating factors.

**[17]** Ultimately, pursuant to AEDPA, we must give deference to a state court's decision unless it is objectively unreasonable. *See* 28 U.S.C. § 2254(d)(1); *Bell*, 535 U.S. at 692. Because it is not reasonably probable that Scott's sentence would have changed had the leniency recommendation been introduced by itself as mitigating evidence, the Arizona post-conviction court's determination Scott suffered no prejudice was neither "contrary to" nor did it "involve an unreasonable application of" *Strickland*. 28 U.S.C. § 2254(d)(1). Thus, this claim does not entitle Scott to habeas relief.

**[18]** However, this does not put the issue to rest. Among the three ineffective assistance of counsel claims the district court will consider on remand is that trial counsel was consti-

tutionally ineffective because he did not investigate and present mitigating evidence during the sentencing phase of Scott's trial. Thus, although the failure to present Milke's recommendation for leniency does not, by itself, establish prejudice, this failure should be re-evaluated by the district court in light of the other mitigating evidence counsel failed to present.

### III.    Conclusion

With respect to the following ineffective assistance of counsel claims, we reverse the district court's determination because the claims are not procedurally defaulted and were exhausted: (1) that trial counsel rendered ineffective assistance of counsel because he failed to challenge the voluntariness of Scott's statements to the police; (2) that trial counsel rendered ineffective assistance of counsel because he did not investigate and present mitigating evidence of Scott's traumatic brain injuries and their effect on his mental processes during the sentencing phase; and (3) that appellate counsel rendered ineffective assistance of counsel because he failed to challenge the trial court's finding Scott committed the crime for pecuniary gain. We remand those claims to the district court for a resolution on the merits in the first instance. We affirm the district court's denial on the merits of Scott's claim that his trial counsel was constitutionally ineffective for not presenting a recommendation for leniency from the victim's father as mitigation evidence. Nevertheless, the district court should reconsider whether this failure prejudiced Scott in light of the other factors the district court considers on remand.

Appellant is awarded costs.[9]

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

---

[9]Appellee's motion to file a supplemental brief is granted. The Clerk shall file the brief received on August 1, 2008.