**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROGER MARK SCOTT,
          *Petitioner-Appellant,*

v.

CHARLES L. RYAN,
          *Respondent-Appellee.*

No. 11-99002

D.C. No.
2:97-cv-01554-PGR

OPINION

Appeal from the United States District Court
for the District of Arizona
Paul G. Rosenblatt, Senior District Judge, Presiding

Argued and Submitted
November 17, 2011—Stanford, California

Filed August 1, 2012

Before: Alex Kozinski, Chief Judge, Jerome Farris and
Carlos T. Bea, Circuit Judges.

Per Curiam Opinion

## COUNSEL

Michael L. Burke, Esq., Jennifer Yolanda Garcia, Esq., Assistant Federal Public Defenders, Federal Public Defender's Office, Phoenix, Arizona, for appellant Scott.

Susanne Bartlett Blomo, Esq., Arizona Attorney General's Office, Phoenix, Arizona, for appellee Ryan.

## OPINION

PER CURIAM:

Roger Scott, an Arizona state prisoner sentenced to death, appeals the denial of his petition for a writ of habeas corpus in federal district court. We have jurisdiction pursuant to 28 U.S.C. §§ 1291, 2253, and we affirm.

On remand to the district court from a prior decision of this court, Scott was allowed to present several pieces of evidence he contended his counsel was ineffective for not presenting at his original sentencing hearing. Scott presented evidence that he had suffered four head injuries, and that these injuries affected his mental functions at the time of the murder. Scott seeks a remand to state court for a new sentencing hearing. We hold that the district court did not abuse its discretion in finding that Scott was not prejudiced by his counsel's failure to submit this additional evidence. We express no opinion as to whether counsel's performance at sentencing was deficient.

## I. Facts

Scott does not challenge the sufficiency of the evidence to support his conviction; he challenges only his sentence on the ground of ineffective assistance of counsel. Accordingly, we rely on the facts found in the Arizona Supreme Court's opin-

ion. *State v. Scott*, 865 P.2d 792, 795-96 (Ariz. 1993). We recite the facts only as necessary to explain our decision.

This case stems from the premeditated murder of a four-year-old named Christopher Milke. Christopher's mother, Debra Milke, her roommate James Styers, and Styers's friend, Roger Scott, were each tried separately for first-degree murder, conspiracy to commit murder, and kidnapping.

Scott gave a full confession to the police of his own role in the planning and execution of the kidnapping and murder. He confessed he drove with Styers and Christopher out into the desert, where Styers shot Christopher. He led the police to Christopher's body, the firearm used to kill Christopher (which was in Scott's closet), and a pair of bloody shoes worn by Styers when he shot Christopher.

After a jury trial, Scott was found guilty of first-degree murder, conspiracy to commit murder, and kidnapping. At the sentencing hearing, Scott's attorney, Roland Steinle, did not present any evidence about head injuries Scott had suffered prior to the crime. Scott received the death penalty. Scott's conviction and sentence were affirmed on direct appeal to the Arizona Supreme Court. *State v. Scott*, 865 P.2d at 806. Scott's petition for post-conviction relief was then denied, as was his petition for review by the Arizona Supreme Court

Scott then filed a petition for writ of habeas corpus in federal court. The district court dismissed a number of claims as procedurally barred and dismissed Scott's remaining ineffective assistance of counsel claims on the merits.

We reversed and remanded to the district court for it to hold an evidentiary hearing and to rule on the merits of Scott's habeas petition.

At the federal evidentiary hearing, Scott presented new evidence concerning his brain damage and contended his counsel

was ineffective for not presenting it earlier. Among this evidence were the reports and testimony from neurologist Thomas Hyde and neuropsychologist Tora Brawley, both of whom were defense witnesses.

Dr. Hyde found that Scott "has multiple neurological deficits that within a reasonable degree of medical certainty" existed at the time of the crime in 1989. In particular, Hyde found evidence of (1) frontal lobe dysfunction; (2) chronic cerebellum damage, most likely secondary to alcohol abuse; and (3) a history of seizures consistent with brain dysfunction either from closed head injury, chronic alcohol abuse, or both. In addition to his examination of Scott, Dr. Hyde reviewed medical records that preexisted the crime in this case and that could have been easily obtained by Scott's trial counsel, Roland Steinle, had he attempted to do so.

Among these records were reports of two CT scans performed on Scott in 1987 and 1988. Both of these CT scans revealed atrophy of Scott's brain that was unusual for a person his age. Scott had told Steinle that he had suffered "brain shrinkage" as a result of numerous head injuries, including a bicycle accident in the seventh grade with a car, two motorcycle accidents, and a car accident—all of which rendered Scott unconscious.

Dr. Hyde opined that Scott's neurological deficits would have had a significant impact on his behavior. He observed that, "[p]articularly the cognitive deficits, the frontal lobe dysfunction would affect his judgment, reasoning, problem solving, behavior under stress, his decision making."

Dr. Brawley and a forensic psychiatrist working at his direction concluded Scott has an IQ of 88, which falls in the low-average range. The testing also revealed deficits in Scott's executive decision making and frontal lobe functioning. Dr. Brawley observed, "[p]atients with frontal lobe dysfunction often exhibit poor judgment, difficult problem

solving due to an inability to explore options (decreased cognitive flexibility), poor sequencing ability, and problems fully comprehending consequences of behavior."

The state's experts—Dr. Harry Tamm, a neurologist, and Dr. James Seward, a neuropsychologist—did not dispute the findings of Drs. Hyde and Brawley as to Scott's current condition. They disagreed with the defense experts as to whether the neurological and neuropsychological deficits from which Scott suffers were present in 1989 when he committed the crimes.

Following post-hearing briefing, the district court issued an order denying Scott all relief, holding that Steinle's failure to investigate the evidence of Scott's brain injuries was *not* ineffective assistance of counsel, and that even if it was, Scott was not prejudiced by it. *Scott v. Ryan,* No. CV-97-1554-PHX-PGR, 2011 WL 240746, at *24-25 (D. Ariz. Jan. 24, 2011).

## II. Standard of Review

Where, as here, there is no state court decision on the merits, the district court reviews the merits *de novo*. *See Pirtle v. Morgan*, 313 F.3d 1160, 1167-68 & n.4 (9th Cir. 2002); *Cone v. Bell*, 556 U.S. 449, 466-67, 472 (2009). Here, *Pirtle* applies because, although the claims were presented to the state post-conviction court, that court dismissed the claims on purely procedural grounds. We held that dismissal was erroneous. *Scott v. Schriro*, 567 F.3d 573, 581 (9th Cir. 2009) (per curiam).

In reviewing an ineffective assistance of counsel claim, the district court is bound by *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, counsel is ineffective if: (1) "representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 688, 694.

In an appeal of a death sentence, "we must [assess prejudice by] compar[ing] the evidence that actually was presented to the [court] with the evidence that might have been presented had counsel acted differently," *Lambright v. Schriro*, 490 F.3d 1103, 1121 (9th Cir. 2007) (per curiam) (internal quotation marks omitted), and determine whether "absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695.

We in turn review the district court's legal holdings *de novo* and its factual findings for abuse of discretion to see if those findings are "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc), *cert. denied*, 131 S. Ct. 2096 (2011).

### III. Scott Was Not Prejudiced by Steinle's Failure to Present Further Mitigating Evidence.

**[1]** At trial, Steinle's theory of defense was that Scott was an unwitting "dupe" with a personality disorder that made him easily manipulated by Styers and Debra Milke. Because the evidence provided through Scott's confession demonstrated he did not act in an impulsive way and that in fact he helped carefully to plan the murder, evidence of a brain injury would not have helped his defense. We find that Scott was not prejudiced by Steinle's decision not to investigate Scott's head injuries further and need not decide in this case whether that decision constituted deficient performance.

On remand, the district court allowed Scott to present the new evidence of his head injuries that he wants to present to the state court in a new sentencing hearing. After considering this evidence, the district court held:

> Based on its review of this information, considered in the light of the new evidence concerning Petitioner's current neurological status, the Court concludes that Petitioner has not met his burden of proving that he was prejudiced by Steinle's performance at sentencing . . . . Assuming evidence existed at the time to support a finding that Petitioner suffered from [cognitive] defects, Petitioner has not established that a mitigation case based on that evidence would have been more persuasive than the theory Steinle did present at sentencing.

*Scott v. Ryan*, 2011 WL 240746, at *25.

**[2]** The record supports the district court's finding that Scott was not prejudiced by Steinle's failure to investigate his head injuries further. Scott's confession revealed he was an active participant in the planning, preparation, execution, and cover-up of the crime, and that he was able to appreciate the wrongful nature of his crime.

Scott gave a taped interview to Detective Mills, detailing the events leading up to, resulting in, and attempting to cover up the murder of Christopher. Detective Mills started the interview by asking Scott if Detective Saldate had informed him of his *Miranda* rights. Detective Mills then proceeded to reiterate the *Miranda* warnings. Scott admitted he came to the police station voluntarily and he had been treated pretty well, without any physical abuse or force.

Scott explained that he, Jim Styers, and Debra Milke all discussed murdering Debra's four-year-old son, Christopher. Scott was promised $250 by Styers, which was to come from a life insurance policy Debra had on Christopher through her work. Scott stated that at first Styers and Debra Milke offered to pay him $150, and then the price went up to $250. The sentencing judge was entitled to infer from this evidence that Scott bargained for the increase in payment.

Even more telling of Scott's active participation in the murder is the fact that on a prior attempt to kill Christopher, Scott had decided the location "wasn't good" and had Styers abort the plan. This evidence shows that, despite his neurological deficits, Scott understood that they were planning a crime, and he took steps to assure they would not get caught.

On the day of the murder, Scott was aware beforehand that he would aid Styers in killing Christopher. Styers, with Christopher in the car, picked up Scott. After getting food, Styers drove as far as Sun City before Scott took over driving. Once near 99th Avenue the three got out of the car. Styers enticed Christopher into the desert with his binoculars and the suggestion they look for snakes, while Scott drove on. When Scott was North of the wash he heard three evenly separated gun shots. From there, he turned the car around, picked up Styers and drove toward the Metrocenter Mall as they had planned. Between 99th Avenue and 83rd Avenue, Styers threw gun casings out of the passenger-side window.

Upon arriving at the Mall, Scott and Styers split up. They then pretended to meet for the first time that day when Styers brought a Sears' employee to Scott. Styers had told the employee that Christopher had gone missing at Sears, and she was helping to look for him. Scott then said he had arrived at the mall with his friend "Phil," who did not exist. Also while at the Mall, Scott disposed of Styers's blood-stained shoes between some bushes north of Sears. The gun Styers had given him remained with Scott on his bus ride back home and was in Scott's closet at the time of the interview.

**[3]** The new evidence that Scott had brain damage does not explain his actions in this case and is insufficient to overcome their egregious nature: helping plan the murder; recommending that there was too much traffic in one place to commit the murder and that they should relocate to a more remote area; negotiating over his fee for participating in the murder; and attempting to cover up the murder by hiding Styers's shoes

and the murder weapon and by going along with Styers's story that Christopher had disappeared at the mall. We cannot say that Scott was prejudiced by Steinle's tactical decision.

Even considering the totality of mitigation evidence that Scott introduced at the district court on remand—evidence of his head injuries, brain shrinkage, and seizures; evidence that the State once offered him a plea bargain to testify against Styers and Debra Milke; and evidence that the victim's father, Mark Milke, thought the trial court should show Scott leniency—we cannot say it would have made any difference in the outcome. Accordingly, Scott was not prejudiced by Steinle's failure to present it at sentencing.

Finally, we decline to expand the certificate of appealability. It is clear from the record that Scott's counsel did not render ineffective assistance of counsel in his challenge to Scott's confession for all the reasons aptly stated in the district court's opinion. *Scott v. Ryan*, 2011 WL 240746, at *4.

The district court's order denying Scott's petition for writ of habeas corpus is therefore affirmed.[1]

**AFFIRMED.**

---

[1]Scott's motion for a remand pursuant to *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), is denied. Scott was already given a remand by our first opinion and on remand he had an opportunity to present all the new evidence he thought relevant to the district court, although none had been presented to the state post-conviction court. The State's motion to strike Scott's motion for a remand is denied as moot.