WILSON, Circuit Judge,
concurring in judgment:
With respect to Hitchcock’s Eighth Amendment claim, I agree that the trial court did not violate clearly established federal law when it rejected this evidence as irrelevant to mitigation in these circumstances. However, I write separately to emphasize that under current Supreme Court precedent, contrary to the Majority’s implication, such evidence is not per se irrelevant, and the Florida Supreme Court would not necessarily have erred had it found the evidence relevant under that precedent. Our holding today should not be taken to suggest that state courts may forego either a standard state-law relevance analysis or an analysis under Lock- *487 ett simply because the evidence relates to plea negotiations. Further, the Majority’s de novo review of the relevance of the evidence in this case is unnecessary to our holding.
Hitchcock’s strongest argument is that the plea negotiations are relevant mitigation evidence because the fact that an offer was made implies that the prosecutor did not initially believe Hitchcock deserved to die, from which a jury could draw a variety of inferences about Hitchcock, the circumstances of his offense, and whether he deserves a penalty less than death. Hitchcock insists that the state cannot bar relevant mitigating evidence from being considered during the penalty phase as a matter of federal law. The Supreme Court has emphasized, including in precedent from this case, the need to admit relevant mitigating evidence into penalty proceedings in capital cases. See Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d 973 (1978) (holding that the Eighth and Fourteenth Amendments “require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, as a mitigating factor, any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death” (emphasis omitted)); Eddings v. Oklahoma, 455 U.S. 104, 113-14, 102 S.Ct. 869, 876-77, 71 L.Ed.2d 1 (1982) (finding that the trial judge’s refusal to consider evidence about the defendant’s troubled childhood, particularly because he committed the crime at age sixteen, violated the rule articulated in Lockett because a sen-tencer cannot refuse to consider relevant mitigating evidence); Dugger, 481 U.S. at 399, 107 S.Ct. at 1824 (holding that failure to consider nonstatutory mitigating circumstances was reversible error because a sentencer cannot be precluded from considering relevant mitigating evidence). Indeed, the Supreme Court has demonstrated willingness to reverse a circuit court for unnecessarily limiting mitigation evidence in a capital case. See Tennard v. Dretke, 542 U.S. 274, 287, 124 S.Ct. 2562, 2571, 159 L.Ed.2d 384 (2004) (finding the Fifth Circuit’s relevance test was too restrictive because “the question is simply whether the evidence is of such a character that it might serve as a basis for a sentence less than death” (citation omitted)).
The Supreme Court’s emphasis on considering all relevant evidence as a matter of federal, constitutional law is an additional protection requiring states to be at least as generous in admitting mitigation evidence relating to a defendant’s character, the record, and any of the circumstances of the offense as they would be in admitting mitigation evidence under their own rules. A rule that something is per se irrelevant — based in part on the fact that we have never deemed it relevant before— risks sending a signal to state courts that consideration of the evidence is prohibited.[1] We clearly have no authority to make such a prohibition under state law, and we *488 also lack that authority under federal law, as the rule is unsupported by Supreme Court precedent. Moreover, it turns the traditional concepts of relevance and admissibility on their heads by assuming that if we have not deemed a specific type of evidence relevant and admissible, it is not. The assumption should be that, as with any piece of evidence, the bar for relevance is low, and in mitigation in a capital sentence, it is lower still. See Lockett, 438 U.S. at 604, 98 S.Ct. at 2964 (“We are satisfied that this qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed.”).
Therefore, while prior plea negotiations may not bear directly on a defendant’s character, criminal record, or the circumstances of his offense, they may support inferences about one or more of those factors. Indeed, the Ninth Circuit held, in a capital case, that a “plea offer’s mitigatory effect is clear: the prosecution thought this was not a clear-cut death penalty case.” Scott v. Schriro, 567 F.3d 573, 584 (9th Cir.2009) (per curiam) (finding that evidence of a prosecutor’s plea offer could be introduced during sentencing as mitigation).[2] Further, even if the Majority is correct about the irrelevance of plea negotiations in this case, such negotiations may be relevant for a host of other reasons that should be evaluated as they arise.[3] Contrary to the Majority’s assertion, such evidence is not analogous either to evidence that, had a defendant’s crime occurred a few hundred feet away, he would not have been charged with a capital offense, see United States v. Gabrion, 719 F.3d 511, 521 (6th Cir.2013) (en banc), or to evidence of the impact that a defendant’s execution will have on his family members or friends, see United States v. Hager, 721 F.3d 167, 194-97 (4th Cir.2013). The former is merely a jurisdictional fact, and the latter does not relate to any party involved in the capital proceeding. By contrast, plea negotiations, at the very least, have the potential to be highly correlated to the nature of the crime or the defendant.
Further, the Majority’s concern that allowing evidence of plea bargain offers at sentencing would discourage plea offers is outside the scope of our analysis. Given that a negotiated plea bargain saves a state from preparing for and trying a case entirely, it stretches logic to worry that prosecutors would stop offering plea bargains because, when such offers are denied, they may be admissible evidence in a subsequent sentencing. At worst, the evi *489 dence will cause the jury to recommend the very sentence that the prosecutor initially offered. In any event, it is unclear what authority permits us to factor such policy concerns into our evaluation of whether a piece of evidence is relevant.[4] As the Majority concedes, it is not suggesting that the potentially “pernicious effect of discouraging prosecutors from extending plea offers” can justify excluding otherwise relevant mitigation evidence. Further, the Majority’s insistence that a prior plea offer could simply reflect the desire to conserve prosecutorial resources or avoid the possibility of acquittal does not support its conclusion that such evidence is irrelevant. Instead, these are merely the points the government would likely offer to rebut a defendant’s claim that the plea negotiations support an inference that the defendant deserves a sentence less than death. As with any evidence, the fact that competing inferences can be drawn does not render the evidence irrelevant.
Our decision is necessarily limited to whether or not the Florida Supreme Court’s decision “was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.”[5] 28 U.S.C. § 2254(d)(1). We agree that it was not, and that conclusion alone resolves this case. Accordingly, I disagree with the Majority that this case calls for a “dual holding” regarding how this evidence would be treated under de novo review, and to the extent we decide this case on a de novo basis, we are adding dicta.
The Majority suggests that we have the authority to announce a dual holding — one under the applicable standard of review, and one under a clearly inapplicable standard of review. As a logical matter, it is of course true that “a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review.” Berghuis v. Thompkins, 560 U.S. 370, 390, 130 S.Ct. 2250, 2265, 176 L.Ed.2d 1098 (2010). This fact makes it more efficient and convenient in some cases to decide a case under both AED-PA’s deferential standard and a de novo standard to avoid the potentially more difficult question of which standard of review is proper. In these cases, a dual holding makes it unnecessary to resolve an otherwise essential issue in the case. This was the situation in Knowles v. Mirzayance, where the Court articulated that habeas relief would be denied under either a de novo or deferential standard of review. 556 U.S. 111, 121 n. 2, 129 S.Ct. 1411, 1418 n. 2, 173 L.Ed.2d 251 (noting that the applicable standard of review was disputed); see also Berghuis, 560 U.S. at 390, 130 S.Ct. at 2265 (“[W]e need not determine whether AEDPA’s deferential standard of review ... applies in this situation.” (citation omitted)).
Where a dual holding does not obviate the need to answer an otherwise essential question to the case, however, the de novo *490 aspect is entirely unnecessary to the resolution of the case, and is therefore by definition dicta. See Black’s Law Dictionary (9th ed.2009) (defining “obiter dictum” as “[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)”). Here, there is no doubt that AEDPA’s deferential standard of review resolves this case, so there is no need to resort to speculation about what we might do under a different standard of review. Hence, the invitation in Berghuis to “engag[e] in de novo review when it is unclear whether AEDPA deference applies.” 560 U.S. at 390, 130 S.Ct. at 2265 (emphasis added). Further, the Supreme Court emphasizes the role of judicial restraint in deciding AEDPA cases. See, e.g., Tyler v. Cain, 533 U.S. 656, 668, 121 S.Ct. 2478, 2485, 150 L.Ed.2d 632 (2001) (stating that the Supreme Court “cannot” decide a question of retroactivity where, in light of AEDPA’s statutory constraints on habeas review, the decision would not help the defendant and declining to address the question because any statement would be “dictum”).[6]
Of course, even where it is clear that AEDPA deference applies, we may add dicta suggesting how we would decide the case were we to address it de novo. So, the fact that “we have employed this approach even when it was clear that the deference afforded by [AEDPA] applied,” Reese v. Sec’y, Fla. Dep’t of Corr., 675 F.3d 1277, 1291 (11th Cir.2012), should not be surprising. In doing so, however, we merely speculate on how we might decide future cases; we do not set precedent. To the extent Reese could be read to suggest that both aspects of a court’s dual holding set binding precedent, that suggestion is itself dicta. In Reese, just as in this case, the only necessary holding was that “the Supreme Court of Florida did not unreasonably apply any clearly established federal rule when it rejected” the defendant’s claim. Id. at 1287; see also id. at 1293-94 (Martin, J., concurring) (“This is not a case where it is unclear whether AEDPA deference applies.... Thus, de novo review is not called for by AEDPA, and it is not necessary for us to affirm.... ” (internal quotation marks omitted)).
Accordingly, the Majority’s elaboration about how it would have treated this evidence were it to have de novo review is dicta, to which I would add that plea negotiations may be relevant under clearly established precedent in two ways — either if state rules deem them relevant or if, in a different situation, such evidence bears more clearly on a relevant mitigation factor. See, e.g., Guida, 549 F.3d at 403 (Merritt, J., dissenting).

. In analyzing Hitchcock's claim the second time, the Florida Supreme Court concluded that testimony about the plea offer was irrelevant because it had no bearing on Hitchcock’s "character or prior record or to the circumstances of the crime.” Hitchcock v. State, 578 So.2d 685, 690 (Fla.1990) (per curiam). While we have to assume the Florida Supreme Court found this irrelevant under Florida law before turning to an analysis of Lock-ett, we note that the court cites only the three factors enumerated in Lockett which are designed to provide additional, federal protection. See Lockett, 438 U.S. at 604, 98 S.Ct. at 2964-65. The fact that the Florida Supreme Court relied on Lockett demonstrates how dangerous it could be to announce a new rule holding this category of evidence per se irrelevant because states look to federal law in death sentencing as a guide.

. While the Majority emphasizes that it is "on the majority side of this issue and not with the Ninth Circuit,” we have not avoided deciding cases contrary to the majority of our sister circuits that have decided an issue. See, e.g., Powell v. Barrett, 541 F.3d 1298, 1309-10 (11th Cir.2008) (en banc) (Carnes, J.) (noting that in evaluating the constitutionality of strip searches, several other circuits distinguish between whether the defendant is arrested on a felony or a misdemeanor charge, but concluding that "[tjhose decisions are wrong”). Moreover, while the Majority would like to create a hard and fast rule that plea negotiation evidence is per se inadmissible, I am merely unwilling to foreclose the possibility that such evidence could be relevant in some cases.

. For example, the district court noted the case of Owens v. Guida, 549 F.3d 399, 402, 419 (6th Cir.2008). In Guida, the prosecutor offered Owens and the hitman she hired to kill her husband a life sentence in return for a guilty plea. Owens accepted, but the hitman refused, and thus the two defendants were tried jointly for first degree murder. 549 F.3d at 403. In closing, the prosecutor argued that Owens deserved the death penalty because she did not acknowledge or repent her crime. Id. at 430 (Merritt, J., dissenting). The dissent argued strenuously that, in this case, the plea negotiations were relevant mitigating evidence. Id. at 431 (Merritt, J., dissenting).

. In Wright v. Bell, cited by the Majority, the Sixth Circuit reaffirmed its holding in Owens that the United States Constitution does not require the admission of failed plea negotiations as relevant mitigation evidence. 619 F.3d 586, 600 (6th Cir.2010). It posits that consideration of the strong policies in favor of plea bargains have motivated such decisions.

. It appears that the first time the Florida Supreme Court was presented with Hitchcock’s claim, it construed it as a vindictive prosecution claim and concluded that there was no evidence that the judge imposed the death penalty because Hitchcock did not agree to take a guilty plea. Hitchcock, 413 So.2d at 746. The second time it concluded that the testimony about the plea offer was irrelevant because it had no bearing on Hitchcock’s character or circumstances of the crime. Hitchcock, 578 So.2d at 690-91.

. The Majority claims that calling its alternative holding dicta ignores well-established law that an alternative holding is binding precedent. But, we have said that “judicial decisions cannot make law beyond the facts of the cases in which those decisions are announced.” Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 762 (11th Cir.2010) (Carnes, J.) (internal quotation marks omitted).