NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUL 25 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| TROY RAY EMANUEL, Jr., | No. 21-15498 |
| Petitioner-Appellant, | D.C. No. 2:16-cv-01368-GMN-EJY |
| v. | |
| DWIGHT NEVEN, Warden; ATTORNEY GENERAL FOR THE STATE OF NEVADA, | MEMORANDUM* |
| Respondents-Appellees. | |

Appeal from the United States District Court
for the District of Nevada
Gloria M. Navarro, District Judge, Presiding

Argued and Submitted March 17, 2022
Las Vegas, Nevada

Before: D.M. FISHER,** BENNETT, and KOH, Circuit Judges.
Concurrence by Judge KOH. Dissent by Judge BENNETT.

Troy Ray Emanuel, Jr., a Nevada state prisoner serving a sentence of up to

35 years, appeals the federal district court's decision to dismiss three of his

ineffective assistance of counsel claims as unexhausted. Specifically, Emanuel

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable D. Michael Fisher, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

1

contends that he exhausted all three claims or, in the alternative, that he was excused from the exhaustion requirement.[1] We have jurisdiction under 28 U.S.C. § 1291. As an initial matter, we expand the certificate of appealability to include the issue of whether Emanuel exhausted all three claims. Because Emanuel exhausted all three claims, we reverse the dismissal of those claims and remand to the federal district court for proceedings consistent with this disposition.

Before a state prisoner may assert a federal habeas claim, he must "exhaust[] the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(1)(A). "A petitioner satisfies the exhaustion requirement by fully and fairly presenting" the "claim to the highest state court." *Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009). Specifically, he must "present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts," *id.*, and "invok[e] one complete round of the State's established appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, he must give the state courts "one full opportunity to resolve" the claim. *Id.*

Three of Emanuel's seven federal claims are relevant to this appeal. First, in "Ground 1," Emanuel claimed that his trial counsel, Richard Tannery, provided

---

[1] Emanuel requests that we take judicial notice of a transcript of a proceeding before Nevada's Eighth Judicial District Court. ECF No. 6. Because we "may take judicial notice of court records in another case," we grant Emanuel's request. *See United States v. Howard*, 381 F.3d 873, 876 n.1 (9th Cir. 2004).

ineffective assistance by misleading Emanuel about the details of his plea deal. Second, in "Ground 2.1," Emanuel claimed that his sentencing counsel, Roy Nelson, provided ineffective assistance by convincing Emanuel not to withdraw his guilty plea. Third, in "Ground 2.2," Emanuel claimed that Nelson provided ineffective assistance by failing to appeal Emanuel's conviction. As explained below, Emanuel exhausted each claim.

Emanuel raised Grounds 1, 2.1, and 2.2 for the first time in a February 2014 habeas petition filed with Nevada's Eighth Judicial District Court (the "state district court"). In addition to describing the factual bases for these claims, Emanuel cited the Sixth Amendment and several cases about the right to effective counsel, including *Strickland v. Washington*, 466 U.S. 668 (1984). Thus, as the State concedes, Emanuel's state petition sufficiently "present[ed] the substance of" Grounds 1, 2.1, and 2.2. *Scott*, 567 F.3d at 582.

Before ruling on the merits of Emanuel's petition, the state district court made two significant procedural rulings. First, the state district court appointed Nelson to represent Emanuel in the habeas proceeding even though Nelson was the subject of two of the three ineffective assistance of counsel claims asserted in Emanuel's habeas petition.[2] Emanuel subsequently sent the state district court at

---

[2] Unlike Tannery, who informed the state district court that it would be inappropriate for him to continue to represent Emanuel after Emanuel raised

3

least five letters asserting that Nelson had a conflict of interest, but a Nevada rule that prohibits *pro se* filings by parties with counsel precluded the filing of those letters. After the appointment, Nelson filed a supplemental brief on Emanuel's behalf. However, that brief made no arguments about the ineffective assistance of counsel claims against Nelson. Then, at the evidentiary hearing on Emanuel's ineffective assistance of counsel claims, Nelson failed to mention Emanuel's claims against Nelson, let alone attempt to develop facts related to those claims.

The state district court's second ruling involved Tannery, who was the subject of one of the assistance of counsel claims asserted in Emanuel's habeas petition. When Tannery failed to appear at the evidentiary hearing, Nelson informed the state district court that Tannery was out of state and requested that the hearing be continued. Although Tannery was the key witness for Emanuel's ineffective assistance of counsel claim against Tannery, the state district court denied the request. Thus, Emanuel had little opportunity to develop facts related to his ineffective assistance of counsel claim against Tannery.

A month after the evidentiary hearing, the state district court issued an order concluding that Emanuel had failed to provide sufficient evidence to support any of his three ineffective assistance of counsel claims against Nelson and Tannery.

---

ineffective assistance claims against Tannery, Nelson never raised with the state district court or the Nevada Supreme Court the conflict of interest created by Emanuel's ineffective assistance claims against Nelson.

4

Emanuel appealed the state district court's order to the Nevada Supreme Court. Although the order made clear that Nelson was the subject of two of Emanuel's ineffective assistance of counsel claims, the Nevada Supreme Court appointed Nelson to represent Emanuel on appeal. Because Nelson missed two filing deadlines, the Nevada Supreme Court removed Nelson as counsel.

After obtaining new counsel, Emanuel filed in the Nevada Supreme Court a "Fast Track Statement" explaining that he was "appealing the denial of post-conviction petition for writ of habeas corpus" and indicated where in the appendix to find the petition and the state district court's order denying the petition. R. at 312, 314.

The Fast Track Statement presented two arguments for vacating the state district court's order and remanding for additional factual development. First, the Fast Track Statement argued that, because Nelson was the subject of two ineffective assistance of counsel claims in Emanuel's petition (*i.e.*, Grounds 2.1 and 2.2), the state district court had erred by appointing Nelson to represent Emanuel. *See id.* at 325 (arguing that Nelson had "a strong disincentive to prove his own ineffectiveness"); *id.* at 327 ("Mr. Nelson failed to raise Mr. Emanuel's appeal deprivation claim.").

Second, the Fast Track Statement argued that, because Tannery was the subject of an ineffective assistance of counsel claim in Emanuel's petition (*i.e.*,

5

Ground 1), the state district court had erred by refusing to continue the evidentiary hearing. *See id.* at 331 ("Mr. Emanuel was entitled to an evidentiary hearing at which Mr. Tannery should have testified, because he asserted claims regarding Mr. Tannery's conduct of Mr. Emanuel's case . . . ."); *id.* at 333 (arguing that the state district court's refusal to continue the hearing "deprived Mr. Emanuel of a meaningful opportunity to litigate the claims made in his post-conviction petition"). Additionally, the Fast Track Statement asserted that Tannery was present at the state district court on the day of the evidentiary hearing and thus could easily have attended the hearing.[3]

The Nevada Supreme Court subsequently transferred the case to the Nevada Court of Appeals, which affirmed the state district court's denial of Emanuel's habeas petition.

Thus, Emanuel exhausted Grounds 1, 2.1, and 2.2 by "invoking one

---

[3] Records from the state district court show that Tannery was present at the state district court for a hearing in *The State of Nevada v. Keontae Johnson*. ECF Nos. 28, 50. In fact, less than fifteen minutes after Emanuel's evidentiary hearing concluded, Nelson attended the *Johnson* hearing with Tannery. *Id.* Although the state district court did not publish an order denying Emanuel's claims until over a month after Emanuel's evidentiary hearing, Nelson never notified the state district court that his representation at Emanuel's evidentiary hearing that Tannery was out of state had been in error. Contrary to the dissent's assertion, the parties have not "established that Nelson learned of Tannery's presence in the courthouse *after* Emanuel's hearing." Dissent at 4 n.2. Any representation by the State or by the dissent as to whether and when Nelson became aware of Tannery's availability is speculative.

6

complete round of [Nevada's] established appellate review process" with respect to each of those claims. *O'Sullivan*, 526 U.S. at 845. As discussed, Emanuel's state habeas petition "present[ed] the substance of" Grounds 1, 2.1, and 2.2 "to the state courts, including a reference to a federal constitutional guarantee and a statement of facts." *Scott*, 567 F.3d at 582. Emanuel then "present[ed] each claim to the highest state court" by filing the Fast Track Statement, *id.*, which argued that the state district court's procedural errors had prevented Emanuel from developing Grounds 1, 2.1, and 2.2 and that a remand was warranted so that Emanuel could develop those claims further. *See* R. at 325–27, 331–33. Through the Fast Track Statement, Emanuel gave the Nevada court system "one full opportunity to resolve" Grounds 1, 2.1, and 2.2 and thus satisfied his obligation to exhaust those claims. *O'Sullivan*, 526 U.S. at 845.[4]

---

[4] The dissent contends that the Fast Track Statement, which focused on the state district court's appointment of Nelson and refusal to continue the evidentiary hearing, cannot have exhausted Grounds 1, 2.1, and 2.2 because Emanuel's federal habeas petition raised the appointment of Nelson and the failure to continue the hearing as separate grounds for habeas relief. Dissent at 5–6. The dissent misses the point. The Fast Track Statement did not argue that the state district court's appointment of Nelson and refusal to continue the hearing were grounds for habeas relief. Instead, the Fast Track Statement argued that those procedural errors had prevented Emanuel from developing Grounds 1, 2.1, and 2.2 and that, as a result, Emanuel was entitled to a remand so that he could return to the state district court and develop Grounds 1, 2.1, and 2.2. Emanuel's subsequent decision to raise the appointment of Nelson and the refusal to continue the hearing as standalone habeas claims in his federal petition does not change the fact that, in the Fast Track Statement, the primary purpose of highlighting these procedural errors was to secure an opportunity to further develop Grounds 1, 2.1, and 2.2 on remand.

After noting that the Fast Track Statement did not argue the merits of Grounds 1, 2.1, and 2.2, the State argues that a habeas petitioner exhausts his claims only if he argues the merits of those claims on appeal. However, the State provides no authority to support its proposed requirement.

To the contrary, our precedent provides that, when procedural errors taint an initial state habeas proceeding, the petitioner may satisfy the exhaustion requirement by identifying those errors on appeal and seeking a remand. *See Scott*, 567 F.3d at 582; *Insyxiengmay v. Morgan*, 403 F.3d 657, 669 n.5 (9th Cir. 2005). The dissent contends that this precedent is irrelevant because *Insyxiengmay* and *Scott* were cases in which the state habeas court dismissed the petitioner's claims on procedural grounds and the petitioner appealed the dismissal so that he could proceed with his claims on remand. Dissent at 7. However, there is no meaningful distinction between a case in which the state habeas court dismissed a petitioner's claims on procedural grounds and a case, like the instant one, in which the state habeas court made procedural rulings that prevented the petitioner from developing facts to support his claims. In both cases, the petitioner is appealing procedural rulings and requesting to return to the state habeas court to present his claims under proper procedures.[5]

---

[5] The dissent suggests that Emanuel "raised more than procedural errors" because Emanuel asserted that the state district court's appointment of Nelson and refusal

8

Indeed, it would be unreasonable to require a petitioner like Emanuel to present the merits of his habeas claims to the state appellate court. Because of the state district court's procedural rulings, Emanuel was unable to undertake meaningful fact development and thus was left with merits arguments that he conceded were unpersuasive. As a result, it would have been "futile" for Emanuel to "present[] any argument on the merits" to the Nevada Court of Appeals. *See Insyxiengmay*, 403 F.3d at 669 n.5.

Accordingly, Emanuel exhausted Grounds 1, 2.1, and 2.2.[6]

**REVERSED AND REMANDED.**

---

to continue the evidentiary hearing violated the U.S. Constitution. Dissent at 8 n.4. However, a court's appointment of counsel and refusal to continue an evidentiary hearing undoubtedly are procedural decisions, regardless of whether they implicate constitutional rights. *See Beard v. Banks*, 542 U.S. 406, 416–17 (2004) (referring to the "right to counsel" as a "rule[] of criminal procedure").

[6] We express no views on the merits of Grounds 1, 2.1, and 2.2. Instead, we hold only that Emanuel may present those claims to the district court on remand.

*Emanuel v. Neven*, 21-15498
KOH, Circuit Judge, concurring:

I write separately to explain why binding precedent provides yet another reason to conclude that Emanuel exhausted Grounds 1, 2.1, and 2.2.

In four published opinions, we have held that a petitioner who includes a copy of his habeas petition in the appendix to his appellate briefing sufficiently presents to the state appellate court all claims in that petition.

We first applied this principle in *Insyxiengmay v. Morgan*, 403 F.3d 657 (9th Cir. 2005), a case in which a Washington state prisoner filed a habeas petition with the Washington Court of Appeals. *Id.* at 663. After the Washington Court of Appeals dismissed the petition as untimely, the petitioner appealed the dismissal to the Washington Supreme Court in a "motion for discretionary review." *Id.* The motion for discretionary review focused exclusively on the timeliness issue and did not address the merits of the claims in the petition. *Id.* However, the petitioner included a copy of the petition in an appendix to the motion for discretionary review. *Id.* We held that, by including the petition in the appendix, the petitioner had exhausted all the claims contained in the petition. *Id.* at 668. We explained that although the "body of the motion dealt with the court of appeals' dismissal on the ground of timeliness," the "appendix contained, *inter alia*, [the petitioner's] arguments regarding the three claims." *Id.* Thus, the petitioner "clearly presented all three claims as federal issues to the Washington Supreme Court." *Id.*

1

Four years later, in *Scott v. Schriro*, 567 F.3d 573 (9th Cir. 2009), we interpreted *Inysyxiengmay* to establish a bright line rule: the "presentation of an issue in an appendix is sufficient to present the issue in a full and fair manner to the state courts." *Scott*, 567 F.3d at 582 (citing *Insyxiengmay*, 403 F.3d at 668). In *Scott*, an Arizona state prisoner filed a habeas petition asserting a single claim in Arizona Superior Court. *Id.* at 577–78. After the Arizona Superior Court dismissed the habeas petition, the petitioner obtained new counsel and requested "leave to file an amended [habeas] petition raising 23 additional claims." *Id.* at 578–79. Based on a state procedural rule, the Arizona Superior Court rejected the petitioner's request. *Id.* The petitioner appealed this rejection to the Arizona Supreme Court and filed a petition for review that focused solely on interpreting the state procedural rule. However, because the petitioner attached his proposed amended habeas petition in the appendix to his petition for review, we held that the petitioner had successfully exhausted all the claims in the proposed amended habeas petition. *Id.* at 582. We explained that the case was "indistinguishable from *Insyxiengmay,* which held that presentation of an issue in an appendix is sufficient to present the issue in a full and fair manner to the state courts." *Id.*

Since *Scott*, we have reaffirmed this rule (the "appendix rule") in two published opinions and have never purported to limit the rule. In *Greenway v. Schriro*, 653 F.3d 790, 801 (9th Cir. 2011), the petitioner appealed to the Arizona

Supreme Court the Arizona Superior Court's denial of his request to file an amended habeas petition. Because the petitioner attached a copy of his proposed amended habeas petition in the appendix to his petition for review, we applied *Scott* and held that the petitioner had exhausted all the claims in the proposed amended habeas petition. *Id.* at 801–02.

Then, in *Gallegos v. Ryan*, 820 F.3d 1013, 1026 n.15 (9th Cir. 2016), we summarily rejected the state's argument that the petitioner had failed to present two claims to the Arizona Supreme Court. We stated, without qualification, that because the petitioner presented the claims in his habeas petition and a "copy of that petition was included in an appendix to his petition for review to the Arizona Supreme Court," the petitioner had exhausted the claims. *Id.*

Thus, the appendix rule is binding precedent and fully applies to the instant case, which is indistinguishable from *Insyxiengmay*, *Scott*, *Greenway*, and *Gallegos*. Like the petitioners in those cases, Emanuel included a copy of his state habeas petition in the appendix to his Fast Track Statement[1] filed with the Nevada Supreme Court. *See* Appellant's Fast Track Appendix at 52–85, *Emanuel v. State*, No. 67255 (Dec. 4, 2015), ECF No. 2015-37071. As the majority notes, the State concedes that Emanuel's state habeas petition fully and fairly presented Grounds 1,

---

[1] In an expedited appeal, a Fast Track Statement is the equivalent of an opening brief. *See* Nev. R. App. P. 3C(e).

2.1, and 2.2. Accordingly, Emanuel exhausted those claims by including a copy of his state habeas petition in the appendix to his Fast Track Statement. *See Insyxiengmay*, 403 F.3d at 668; *Scott*, 567 F.3d at 582; *Greenway*, 653 F.3d at 801; *Gallegos*, 820 F.3d at 1026 n.15.

The dissent contends that a Nevada state procedural rule precludes application of the appendix rule. Specifically, the dissent points to Nevada Rule of Appellate Procedure 28(e)(2) ("Rule 28(e)(2)"), which provides in relevant part that "[p]arties shall not incorporate by reference briefs or memoranda of law submitted to the district court or refer the Supreme Court to such briefs or memoranda for the arguments on the merits of the appeal." According to the dissent, Rule 28(e)(2) means that "claims not raised in the Fast Track Statement itself are unexhausted." Dissent at 14.

For two reasons, the dissent misinterprets Rule 28(e)(2), which does not preclude application of the appendix rule. First, in *Insyxiengmay*, we rejected a nearly identical argument about a Washington rule of appellate procedure. In *Insyxiengmay*, the state argued that the petitioner could not rely on the appendix because "Washington courts do not permit 'incorporation' in motions, briefs, or petitions of material contained in the appendices to those documents." *Insyxiengmay*, 403 F.3d at 668. However, we determined that "[a]ll the cases cited by the State in support of its argument involve briefs or other filings that raise

4

issues by incorporation by reference of another document *not before the appellate court*, generally trial memoranda." *Id.* (emphasis added). "In other words, those cases prohibit incorporation of material that has *not* been filed with the court itself." *Id.* Thus, because the petitioner had attached the appendix to his brief, the appendix was "before the appellate court." *Id.* at 668–69.

Rule 28(e)(2) in the instant case is nearly identical to the Washington rule considered in *Insyxiengmay*: it merely prevents the incorporation of "briefs or memoranda of law submitted to the district court," *i.e.*, trial court documents not before the appellate court. Thus, because Emanuel filed his appendix with the Nevada Court of Appeals, Rule 28(e)(2) did not preclude the Nevada Court of Appeals from considering documents in the appendix.

Second, even if Rule 28(e)(2) can be read as applying to documents filed with the appellate court, Rule 28(e)(2) states only that these documents cannot be used "for the arguments on the merits of the appeal." Emanuel did not use his petition "for the arguments on the merits of the appeal." As the majority explains, Emanuel argued to the Nevada Court of Appeals that the state district court had prevented him from developing the three ineffective assistance of counsel claims in his habeas petition. Specifically, Emanuel argued that, by appointing Nelson to represent Emanuel in the habeas proceeding, the state district court prevented Emanuel from developing the two ineffective assistance of counsel claims against

5

Nelson.[2]  Emanuel also argued that, by refusing to continue the evidentiary hearing to a day that Tannery could be present, the state district court prevented Emanuel from developing his ineffective assistance of counsel claim against Tannery. Based on these arguments, Emanuel requested a remand so that he could properly develop his three ineffective assistance of counsel claims.  Emanuel provided the Nevada Court of Appeals with a copy of his habeas petition so the court could properly assess his procedural arguments and would know which claims he sought to present on remand.[3]

Additionally, the dissent seeks to avoid applying the appendix rule by

---

[2] The Nevada Supreme Court compounded this mistake by appointing Nelson to represent Emanuel on appeal.

[3] The dissent also asserts that "there is no 'appendix rule'" because *Insyxiengmay*, *Scott*, *Greenway*, and *Gallegos* relied upon state procedural rules that authorized the incorporation of arguments by reference.  Dissent at 12–13.  However, none of these cases relied upon state procedural rules to find exhaustion.  In *Insyxiengmay*, we held that because the "appendix contained, *inter alia*, [the petitioner's] arguments regarding" three claims, the petitioner had "clearly presented all three claims as federal issues to the Washington Supreme Court." *Insyxiengmay*, 403 F.3d at 668.  This conclusion did not rely on any Washington procedural rules, let alone a specific rule authorizing incorporation by reference.  Similarly, in *Scott*, we held without qualification that "presentation of an issue in an appendix is sufficient to present the issue in a full and fair manner to the state courts." *Scott*, 567 F.3d at 582.  To reach this holding, we relied exclusively on *Insyxiengmay* and made no reference to any Arizona procedural rules. *Id.*  We subsequently reached the same conclusion in *Greenway*, 653 F.3d at 801, and *Gallegos*, 820 F.3d at 1026 n.15, without any discussion of Arizona procedural rules.  Thus, there is no support for the dissent's argument that *Insyxiengmay*, *Scott*, *Greenway*, and *Gallegos* relied upon state procedural rules.

6

suggesting factual distinctions between the instant case and *Insyxiengmay*, *Scott*, *Greenway*, and *Gallegos*. According to the dissent, the appendix rule applies only if the petitioner's brief "sufficiently apprised" the appellate court of the claims in the appendix. Dissent at 14 n.7.

However, the dissent's argument ignores the unequivocal language of the appendix rule: the "presentation of an issue in an appendix is sufficient to present the issue in a full and fair manner to the state courts." *Scott*, 567 F.3d at 582 (citing *Insyxiengmay*, 403 F.3d at 668); *see also Greenway*, 653 F.3d at 801 (quoting *Scott*); *Gallegos*, 820 F.3d at 1026 n.15 (quoting *Scott*). This language leaves no room for an inquiry into whether the petitioner's brief sufficiently referenced the claims in the appendix. Indeed, in *Insyxiengmay*, 403 F.3d at 668, we noted that the "body" of the petitioner's brief exclusively "dealt with the court of appeals' dismissal on the ground of timeliness." However, all that mattered was that the claims were "contained" in the appendix, which was "before the appellate court." *Id.* Similarly, in *Gallegos*, 820 F.3d at 1026 n.15, we made no mention of whether the petitioner's brief expressly referenced the claims in the appendix.

Even if the appendix rule were limited to cases in which the petitioner's appellate brief "sufficiently apprised" the appellate court of the claims in the appendix, Emanuel's Fast Track Statement did just that. After stating that "Mr. Emanuel is appealing the denial of post-conviction petition for writ of habeas

corpus," the Fast Track Statement set forth the procedural history of the case and cited the appendix page numbers for the habeas petition, which set forth the factual basis for Grounds 1, 2.1, and 2.2 and cited *Strickland v. Washington*, 466 U.S. 668 (1984). *See* R. at 312; *id.* at 314 (citing Fast Track Appendix at 52–85, *Emanuel v. State*, No. 67255 (Nev. Dec. 4, 2015), ECF No. 2015-37071). The Fast Track Statement also cited the appendix page numbers for the state district court order denying Grounds 1, 2.1, and 2.2. *Id.* at 314 (citing Fast Track Appendix at 220–27, *Emanuel v. State*, No. 67255 (Nev. Dec. 4, 2015), ECF No. 2015-37071).

Indeed, Emanuel's Fast Track Statement was significantly clearer than the appellate brief at issue in *Scott*. In *Scott*, the petitioner's brief did not describe any of the claims in his proposed amended petition. *See* Excerpts of Record at 238–55, *Scott v. Schriro*, No. 05-99012 (9th Cir. Sept. 5, 2007), ECF No. 50. Instead, the brief's sole reference to the contents of the amended petition was a statement that Scott's original habeas counsel had failed to bring "many colorable claims" and that the amended petition would include "claims that [Scott's] prior counsel had failed to raise." *Id.* at 243. If this reference was sufficient to make the Arizona Supreme Court aware of the *Scott* petitioner's claims, Emanuel's Fast Track Statement, which cited the appendix page numbers for Emanuel's habeas petition asserting Grounds 1, 2.1, and 2.2 and the state district court order denying these grounds, was sufficient to make the Nevada Court of Appeals aware of Grounds 1,

8

2.1, and 2.2.

Finally, the dissent and the State attempt to avoid applying the appendix rule by arguing that Emanuel has forfeited his ability to rely on the rule. At oral argument, the State presented two new arguments. First, the State contended that, because Emanuel raised the appendix rule for the first time in his reply brief, we may not rely on the appendix rule. Oral Argument at 27:50, *Emanuel v. Neven* (9th Cir. Mar. 17, 2022) (No. 21-15498), https://bit.ly/3qMM3IR. Second, the State contended that, because Emanuel did not raise the appendix rule before the federal district court, Emanuel waived reliance on the appendix rule. *Id.* at 27:40. The dissent largely echoes these arguments. *See* Dissent at 9–10. For the reasons below, these arguments are unpersuasive.

Although the State is correct that we typically do not address arguments raised for the first time in a reply brief, there are at least two reasons we may rely on the appendix rule. First, Emanuel's opening brief argued that he "presented the factual and legal basis" for his claims "to the Nevada Court of Appeals" and cited the exact page of *Scott* that established the appendix rule. Appellant's Opening Br. at 54 (citing *Scott*, 567 F.3d at 582). This argument and citation sufficiently raised the appendix rule. Indeed, the State itself interpreted Emanuel's brief as raising the appendix rule and expressly addressed the rule in the supplemental answering brief. *See* Supp. Ans. Br. at 11 n.3. Second, even if Emanuel's argument in the

9

opening brief did not sufficiently raise the appendix rule, we may address the appendix rule because the State raised it in the supplemental answering brief. *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) ("Although we ordinarily decline to consider arguments raised for the first time in a reply brief, we may consider them if, as here, the appellee raised the issue in its brief.").

As to the State's second new argument, that Emanuel did not raise the appendix rule before the federal district court, we may reach an issue not raised below "when the issue presented is purely one of law and . . . the pertinent record has been fully developed." *Bolker v. Comm'r of Internal Revenue*, 760 F.2d 1039, 1042 (9th Cir. 1985). The issue of whether Emanuel exhausted Grounds 1, 2.1, and 2.2 by including his state habeas petition in the appendix to his Fast Track Statement "is purely one of law" and "the pertinent record has been fully developed." *See id.* The parties do not dispute that Emanuel included the petition in the appendix and do not dispute the contents of the petition. Thus, because the parties dispute "only the attendant legal ramifications" of the appendix, we may resolve that dispute. *In re Pro. Inv. Props. of Am.*, 955 F.2d 623, 625 (9th Cir. 1992).

Accordingly, under the appendix rule established and applied in *Insyxiengmay*, *Scott*, *Greenway*, and *Gallegos*, Emanuel exhausted Grounds 1, 2.1, and 2.2.

FILED

JUL 25 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

BENNETT, Circuit Judge, dissenting:

Troy Emanuel, Jr. tried to shoot and kill a group of people near the Las Vegas strip on an early summer morning in 2012. Emanuel and three of his friends got into a fist fight with another group. After the fight, and in pursuit of a missing cell phone, Emanuel and his friends found the other group near the Venetian hotel. Emanuel held one man from the group at gunpoint as Emanuel's friends beat and robbed him. Later, Emanuel and his friends followed the other group to an apartment complex and found them sitting in an outdoor courtyard. Emanuel and his friends demanded that the group return the cell phone. The group insisted they did not have it, and Emanuel's friend told Emanuel to leave them alone. Emanuel fired a semi-automatic handgun multiple times at the group as they tried to escape. Emanuel's shots hit and injured four out of the five people in the group.

In its amended criminal complaint, the State charged Emanuel and his three friends with one count of conspiracy to commit murder, four counts of attempt murder with use of a deadly weapon, four counts of battery with use of a deadly weapon resulting in substantial bodily harm, one count of robbery with use of a deadly weapon, and one count of discharging firearm at or into structure, vehicle, aircraft, or watercraft. Though Emanuel pleaded not guilty at his arraignment hearing, his co-defendants entered plea agreements in which they stipulated to

1

sentences of twenty-four months to sixty months, and twenty-eight months to seventy-two months. In all three cases, the court imposed the agreed-upon sentences. Emanuel filed pro se pretrial motions to dismiss his appointed counsel, Richard Tannery, and to appoint new counsel. The State offered Emanuel a plea agreement, under which Emanuel would have stipulated to a sentence of eight to twenty years. Though Tannery had advised Emanuel to accept the offer, Emanuel rejected it. The state trial court denied Emanuel's motions to remove Tannery.

On the first day of trial, Emanuel pleaded guilty to all but one count, which the State dismissed. The State did not stipulate to a sentence or agree to any particular sentencing recommendation.[1] One month after the plea, Emanuel filed a

_____

[1] At the plea colloquy, Emanuel stated that he understood how long he could be sentenced to because of his plea. The court provided him with the sentence ranges for each count. Count 1, conspiracy to commit murder: two to ten years. Counts 7 through 10, battery with use of a deadly weapon resulting in substantial bodily harm: two to fifteen years each. Count 11, robbery with use of a deadly weapon: two to fifteen years, with a consecutive term of one to fifteen years for the use of a deadly weapon. Counts 2 through 6, attempt murder with the use of a deadly weapon: two to twenty years each, plus a consecutive term of one to twenty years. Emanuel was eligible for probation for each count except robbery with use of a deadly weapon. The sentencing judge had discretion to order the sentences served concurrently or consecutively.

And Emanuel made several statements that might contribute to what the majority describes as his "unpersuasive" merits arguments. Mem. Disp. at 9. Emanuel stated that he had discussed the plea agreement "fully" with his attorneys. He said his attorneys had "answered all [his] questions to [his] satisfaction" such that he was "satisfied with their services." Emanuel said he understood that the State "agreed to retain the right to argue at the rendition of sentence." Emanuel agreed that "no one ha[d] promised or guaranteed [him] any particular sentence,"

2

pro se motion to withdraw his plea, arguing Tannery convinced him to plead guilty by promising he would get the same time as his co-defendants. Emanuel filed a third pro se motion to dismiss Tannery as counsel. Tannery told the state trial court it would be inappropriate for him to represent Emanuel at sentencing; the court agreed and appointed Roy Nelson for the rest of the proceedings.

Nelson informed the state trial court that Emanuel's motion to withdraw his guilty plea was based on ineffective assistance of counsel, which Nelson advised Emanuel to bring as a postconviction claim. Though Nelson at first requested an evidentiary hearing, Nelson later informed the state trial court that Emanuel no longer wished to "conduct an evidentiary hearing or to try to withdraw his plea." At the sentencing hearing, the State emphasized that Emanuel was "the sole shooter with the gun in this case" and recommended a sentence of fourteen to thirty-five years, which the state trial court imposed.

The majority reverses the federal district court's reasoned finding that Emanuel did not exhaust three of his ineffective assistance claims raised in his first amended petition to the district court: Ground 1, "Emanuel was denied the effective assistance of trial counsel (Richard Tannery) as guaranteed by the Sixth

_____

and that he understood his sentence was "to be determined by the court within the limits proscribed by statute." Finally, he stated that he was not "acting under duress or coercion by virtue or promises of leniency except those that are set forth in [the plea] agreement."

and Fourteenth Amendments to the United States Constitution"; Ground 2.1, "Counsel convinced Emanuel to abandon a pre-sentencing motion to withdraw guilty plea and to instead pursue the issue in a post-conviction proceeding"; and Ground 2.2, "Counsel failed to perfect Emanuel's direct appeal despite being requested to file an appeal." Because Emanuel's state appellate briefing (the Fast Track Statement) does not "fully and fairly present[] . . . the substance" of these claims to the Nevada Court of Appeals, *Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009) (per curiam), I respectfully dissent.

## I.

The majority frames Emanuel's ineffective assistance claims at a level of generality that does not align with the required exhaustion inquiry. *See Insyxiengmay v. Morgan*, 403 F.3d 657, 667 (9th Cir. 2005) ("Exhaustion is determined on a claim-by-claim basis."). The majority focuses on "two significant procedural rulings" of the state trial court: appointing Nelson as habeas counsel and denying Emanuel's request to continue the hearing.[2] Mem. Disp. at 3–4. The

---

[2] The majority also points to the Fast Track Statement's assertion "that Tannery was present at the state district court on the day of the evidentiary hearing and thus could easily have attended the hearing." Mem. Disp. at 6. This alleged error was dismissed as non-cognizable, and is not on appeal. Moreover, though the parties have established that Nelson learned of Tannery's presence in the courthouse *after* Emanuel's hearing, that fact cannot prove that Nelson knew about Tannery's presence at the time of the hearing, such that he made a misrepresentation to the court. Nelson stated to the court: "Mr. Tannery's not

4

majority contends that these procedural errors—which were raised in the Fast

Track Statement[3]—exhausted Grounds 1, 2.1, and 2.2.  Mem. Disp. at 6–9.  But

here.  I believe he's in Oklahoma. . . . I would think it's appropriate to have Mr. Tannery here, but I'll submit it to Your Honor."

The majority faults Nelson for not informing the state court that Tannery was in town and in the courthouse after learning he was not in Oklahoma.  Mem. Disp. at 6 n.3.  But Nelson's mistaken belief was of no consequence; the state court decided to hear the claim based on Judd's testimony of the plea negotiation process rather than continue the case, and the evidentiary hearing was completed by the time Nelson unexpectedly ran into Tannery at the *Johnson* hearing.  As the government's 28(j) letter explains, the video of the Johnson hearing does not indicate that "Nelson knew, at the time of Emanuel's evidentiary hearing earlier that morning, that Tannery was in Las Vegas."  Moreover, the government's counsel argues "the parties appeared surprised at Tannery's presence."

[3] The majority contends that the "Fast Track Statement did not argue that the state district court's appointment of Nelson and refusal to continue the hearing were grounds for habeas relief."  Mem. Disp. at 7 n.4.  Rather, the majority asserts, "the primary purpose of highlighting these procedural errors was to secure an opportunity to further develop Grounds 1, 2.1, and 2.2 on remand." *Id.*  This position is belied by the larger context of these procedural claims in the Fast Track Statement.  After citing circuit precedent related to irreconcilable conflicts of interest that deprived defendants of their Sixth Amendment right to effective assistance of counsel, the Fast Track Statement argued that Nelson "actively represented conflicting interests that affected his performance."  The Fast Track Statement pointed out that Emanuel did not waive his right to conflict-free representation.  And it averred that because a "presumption of prejudice arises when an actual conflict of interest adversely affects counsel's performance," "Nelson's active conflict of interest amount[ed] to prejudice per se, and Mr. Emanuel [was] relieved of his burden of demonstrating any prejudice resulting from Mr. Nelson's conflict of interest."  Only after making this assertion did the Fast Track Statement link Nelson's conflict of interest to his "failure to perfect a direct appeal, and the failure to raise an appeal deprivation claim in the post-conviction petition."

Similarly, the Fast Track Statement argued a due process violation resulted from the evidentiary hearing being held without Tannery present.  Emanuel claimed he was "entitled to an evidentiary hearing at which Mr. Tannery should

5

Emanuel raised these procedural errors in *other* claims in the first amended federal petition: Ground 2.3, "Counsel did not effectively represent Emanuel in the state post-conviction proceedings because of a conflict of interest," and Ground 3.1, "Emanuel was denied his due process right to be heard at a meaningful time and in a meaningful manner when the court insisted that Emanuel's trial attorney—and the subject of his ineffective assistance claim—wasn't necessary for the hearing." The district court dismissed these arguments as non-cognizable.

The majority errs by relying on these procedural claims to conclude that *the substance* of entirely different claims—Grounds 1, 2.1, and 2.2—were presented to the Nevada Court of Appeals. The majority criticizes the State for arguing, and the federal district court for finding, that the claims can be exhausted only if the merits of the claims are presented on appeal, but the majority does not explain the difference between "the substance of" Grounds 1, 2.1, and 2.2 and "the merits" of those Grounds. *See* Mem. Disp. at 7–8. Instead, the majority sidesteps the

---

have testified, because he asserted claims regarding Mr. Tannery's conduct of Mr. Emanuel's case." Thus, "there was a substantial risk of erroneous deprivation of Mr. Emanuel's interest in a meaningful evidentiary hearing." This is a standalone due process claim that is not based upon Emanuel's claims in Grounds 1, 2.1, or 2.2. While the Fast Track Statement noted that Tannery's absence "deprived Mr. Emanuel of a meaningful opportunity to litigate the claims made in his post-conviction petition," it also stated that "[m]ore importantly . . . , the absence of Mr. Tannery denied Mr. Emanuel of the right to due process."

Thus, it is simply not the case that the appointment of Nelson or the lack of a meaningful evidentiary hearing were raised primarily "to secure an opportunity to further develop Grounds 1, 2.1, and 2.2 on remand." Mem. Disp. at 7 n.4.

6

requirement that the *substance* of the claim must be fully and fairly presented to the state appellate court, *see Scott*, 567 F.3d at 582, by relying on a strained interpretation of our case law.

According to the majority, "our precedent provides that, when procedural errors taint an initial state habeas proceeding, the petitioner may satisfy the exhaustion requirement by identifying those errors on appeal and seeking a remand." Mem. Disp. at 8. The majority relies on a footnote in *Insyxiengmay* to make this sweeping statement. But *Insyxiengmay* addressed the exhaustion of three claims, all of which the Washington Supreme Court barred the petitioner from presenting to the court of appeals. 403 F.3d at 669 n.5. The claims were presented as part of a motion requesting the claims proceed, which the Washington Supreme Court rejected. *Id.* Thus, under those circumstances, "presenting any argument on the merits would have been, and was, futile." *Id.*

Not so here. Emanuel's pro se state petition, Fast Track Statement, and first amended federal petition presented various ineffective assistance of counsel claims, some of which were dismissed as non-cognizable, and others dismissed on the merits. Emanuel did not appeal every dismissal. It defies logic to allow two distinct ineffective assistance of counsel claims to subsume the *other* ineffective

7

assistance of counsel claims at issue—especially when courts must conduct the exhaustion inquiry "on a claim-by-claim basis."[4] *Id.* at 667.

The Fast Track Statement does not exhaust Grounds 1, 2.1, and 2.2, and the majority errs by so finding. The majority quotes the Fast Track Statement's references to Nelson's "own ineffectiveness," "Mr. Emanuel's appeal deprivation claim," "claims regarding Mr. Tannery's conduct," and "the claims made in his post-conviction petition" to support its conclusion. Mem. Disp. at 5–6. But these general references did not fully and fairly present the three ineffective assistance of counsel claims at issue to the Nevada Court of Appeals. Emanuel would have exhausted these claims by apprising the court of the "substance of [each] claim . . . , including a reference to a federal constitutional guarantee and a statement of facts that entitle[d] [him] to relief." *Scott*, 567 F.3d at 582. For

---

[4] The majority finds "no meaningful distinction between a case in which the state habeas court dismissed a petitioner's claims on procedural grounds and a case, like the instant one, in which the state habeas court made procedural rulings that prevented the petitioner from developing facts to support his claims." Mem. Disp. at 8. The difference is that Emanuel is not "appealing procedural rulings and requesting to return to the state habeas court to present his claims under proper procedures," contrary to the majority's assertion. *Id.* Rather, he claimed a Sixth Amendment violation based on Nelson's conflict of interest, and a due process violation based on the state habeas court's denial of a continuance. Emanuel thus raised more than procedural errors that prevented him from developing merits arguments; these claims were merits arguments on their own—separate from the other grounds presented. Nor was there any procedural rule barring Emanuel from presenting each of his claims at every stage of review. Nothing prevented Emanuel from including Grounds 1, 2.1, and 2.2 in his Fast Track Statement.

8

example, he did this in his first amended federal petition by citing the Sixth Amendment right to effective counsel as the basis for his claims and discussing the facts supporting his claims against Tannery and Nelson. The Fast Track Statement, however, did not include such arguments for Grounds 1, 2.1, and 2.2. Thus, we cannot find that Emanuel "invok[ed] one complete round of [Nevada's] established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

I would affirm the well-reasoned decision of the district court on this issue.

## II.

I also respond to the concurrence's position that Emanuel sufficiently presented the arguments from his state habeas petition to the Nevada Court of Appeals by including a copy of that petition in the appendix to his Fast Track Statement. The concurrence argues "the appendix rule is binding precedent and fully applies to the instant case." Concurrence at 3. I disagree; even if the argument had not been waived (and it was), applying the newly coined "appendix rule" to this case would be an unwarranted expansion of this very limited doctrine (if indeed it even is a doctrine).

At the outset, Emanuel waived this argument below *and* on appeal. First, he did not argue to the district court that because the appendix of the Fast Track Statement included the pro se petition, the ineffective assistance of counsel claims

9

were exhausted. He did not even include the appendix in the district court record. And his counsel conceded at oral argument that Emanuel did not make the appendix argument to the district court. Oral Arg. at 9:30–10:20. Thus, Emanuel waived the "appendix" argument below. *See Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005).

Second, Emanuel raised the argument to our court for the first time in his reply brief to our requested supplemental briefing. The concurrence states that we may consider arguments raised for the first time in a reply brief if the appellee raised the issue in its brief. Concurrence at 9–10 (citing *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (per curiam)). But this court has declined to reach an argument raised for the first time in the reply brief, even though the appellees raised it, when the "appellees merely noted that [the appellant] had failed to raise the issue" and the "issue ha[d] not been fully explored." *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990). This is analogous to what happened here. The State's discussion of *Scott* in a footnote of its supplemental answering brief described only Arizona's postconviction review procedure; it did not discuss the Fast Track Statement's appendix.[5] Thus, the issue is waived on appeal.

---

[5] So not only is this issue doubly waived, but the State also never had the chance to address it in writing, as it was discussed on the merits for the first time in the final brief of the five filed. Appellate courts ordinarily do not consider such late arguments "so that appellees are not prejudiced by the lack of an opportunity

To be clear, though, there is no "appendix rule" in this circuit.[6]  Instead, this court must abide by state procedural rules.  *See Shinn v. Martinez*, 142 S. Ct. 1718, 1732 (2022) ("[T]o allow a state prisoner simply to ignore state procedure on the way to federal court would defeat the evident goal of the exhaustion rule.").  The states have different fair presentation requirements for postconviction review.  *See* Brian R. Means, Postconviction Remedies § 23:17 (2021) ("[I]t would appear that a general incorporation by reference will not satisfy the exhaustion requirement, at least where incorporation by reference is prohibited as a matter of state law.  In the event the state does not restrict incorporation by reference, however, the result is less clear." (footnote omitted)).  In California, for example, "California Rule of Court 28 expressly prohibits the incorporation by reference of authorities or argument from another document."  *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999); *see* Cal. R. of Ct. 8.504(e)(3).  The Supreme Court has also emphasized the importance of looking to state rules when determining whether exhaustion requirements were met.  In *Baldwin v. Reese*, 541 U.S. 27 (2004), the Court cited Oregon Rule of Appellate Procedure 9.05(7) for the requirement that petitioners

---

to respond to issues raised for the first time in an appellant's reply brief." *United States v. Boggi*, 74 F.3d 470, 478 (3d Cir. 1996).

[6] The concurrence's response to this position misses the point.  Concurrence at 6 n.3.  The Ninth Circuit is bound by state procedural rules, and, as I explain below, Arizona and Washington's rules do not preclude incorporation of an appendix by reference, but Nevada's rules do.

"identify clearly in the petition itself the legal questions presented, why those questions have special importance, a short statement of relevant facts, and the reasons for reversal, 'including appropriate authorities,'" and held that "a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief . . . that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Id.* at 31–32. *Gatlin* and *Baldwin* "indicate that courts should look to the relevant state procedural rules for guidance." Means, Postconviction Remedies § 23:17 at n.52.

Despite the concurrence's explication of the four cases that it claims have applied the so-called "appendix rule," the concurrence did not mention either Arizona's or Washington's statutory frameworks that allow this court to permit incorporation by reference in those state contexts. Arizona explicitly allows issues to be incorporated by reference in an appendix. Under the version of the statute when *Scott* was decided, Arizona law provided that a post-conviction petition for review "shall not incorporate any document by reference, except the appendices." Ariz. R. Crim. P. 32.9(c)(1)(iv) (2009). Washington's framework is slightly more intricate. Before this court decided *Insyxiengmay*, the Supreme Court of Washington denied incorporation by reference because "[o]nly issues raised in the assignments of error, or related issues, and argued to the appellate court are

12

considered on appeal." *US W. Commc'ns Inc. v. Wash. Utils. & Transp. Comm'n*, 949 P.2d 1337, 1356 (Wash. 1997). In support of this conclusion, the Supreme Court of Washington cited state rules that affirmatively discuss the contents of appellate briefs, Wash. R. App. P. 10.3, the appellate court's general commitment to decide a cased based only on issues raised in the briefs, Wash. R. App. P. 12.1, and the Supreme Court of Washington's procedures for considering briefs and supplemental briefs, Wash. R. App. P. 13.7. The government's brief in *Insyxiengmay* made a similar argument, also pointing to the rule that "in order to present an issue to the Washington Supreme Court, a petitioner must make a concise statement of the issue in the petition for review." Brief of Respondent-Appellee at 21, Insyxiengmay v. Morgan, 403 F.3d 657 (9th Cir. 2005) (No. 02-36017) (citing Wash. R. App. P. 13.4(c)(5)). But there was no "Washington rule" specifically addressing incorporation by reference; the *Insyxiengmay* court's decision did not conflict with codified Washington law when it held that the appendix, which was attached to the petitioner's brief and thus was "before the appellate court," could be incorporated. 403 F.3d at 668.

By contrast, the Nevada rule that binds us here is unequivocal: "Parties shall not incorporate by reference briefs or memoranda of law submitted to the district court or refer the Supreme Court or Court of Appeals to such briefs or memoranda for the arguments on the merits of the appeal." Nev. R. App. P. 28(e)(2). Arizona

13

and Washington lack a comparable statutory rule barring incorporation by reference (without exception for appendices, as Arizona provides).[7]  The concurrence therefore errs by suggesting this court has created a bright line rule on this issue, which instead depends on variations in state law.

Here, the "appendix rule" is specifically barred by Nevada law, which makes it clear that claims not raised in the Fast Track Statement itself are unexhausted.[8]

---

[7] Thus, *Insyxiengmay*, *Scott*, and the two Arizona cases decided after *Scott*— *Greenway v. Schriro*, 653 F.3d 790 (9th Cir. 2011), and *Gallegos v. Ryan*, 820 F.3d 1013 (9th Cir. 2016)—are easily distinguishable.  Unlike in those cases, the inclusion of Emanuel's pro se petition as part of the appendix of the Fast Track Statement, without more, did not "fairly present" Grounds 1, 2.1, and 2.2 such that it sufficiently apprised the Nevada Court of Appeals of his arguments.  The appendix is the *only* place the factual and legal bases of the claims against Tannery and Nelson in Grounds 1, 2.1, and 2.2 were arguably made.  It cannot be said that these claims were fully and fairly presented to the Nevada Court of Appeals, under this Nevada rule, when they were not discussed at all in the Fast Track Statement. The references to "the appendix page numbers for the state district court order denying Grounds 1, 2.1, and 2.2" are precisely the type of references Rule 28(e)(2) prohibits.  Concurrence at 8.

[8] "[O]nly rarely may a federal habeas court hear a claim or consider evidence that a prisoner did not previously present to the state courts *in compliance with state procedural rules*."  *Shinn*, 142 S. Ct. at 1730 (emphasis added).  We abide by state procedural rules "unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'"  *Smith v. Murray*, 477 U.S. 527, 533 (1986) (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)).  Because Emanuel has not established cause and actual prejudice, we should enforce this state procedural rule. *See Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (holding that because the "Constitution does not guarantee the right to counsel" in habeas proceedings, ineffective habeas counsel generally "cannot supply cause to excuse a procedural default").

*See Johnson v. Gittere*, No. 3:18-CV-00496-LRH-WGC, 2020 WL 1890499, at *2 (D. Nev. Apr. 16, 2020) ("In the appeal from the denial of the state post-conviction habeas corpus petition, petitioner attempted to incorporate by reference the claims that he raised in his proper-person petition and his proper-person supplement which he did not specifically raise in the opening brief. He did not provide any argument in support of those claims. This was insufficient to exhaust those claims. Nevada does not allow incorporation by reference. Nev. R. App. P. 28(e)(2)." (further citations omitted)). The Nevada rule thus differs materially from the law in Arizona discussed in *Scott* and the law in Washington discussed in *Insyxiengmay*.[9] *See Mortensen v. Neven*, No. 2:11-CV-00266-KJD-CWH, 2013 WL 357581, at *10 (D. Nev. Jan. 28, 2013) (discussing the appendix rule from

---

Our district courts have recognized the Nevada rule that parties cannot incorporate arguments by reference. *Abara v. Palmer*, No. 3:10-CV-00688-LRH-VPC, 2012 WL 3638756, at *3 (D. Nev. Aug. 22, 2012) (citing Nev. R. App. P. 28(e)(2) to reject any argument that materials in the appendix to the Fast Track Statement could incorporate claims on appeal); *Guardado v. Nev. Att'y Gen.*, No. 3:10-CV-00103-LRH-WGC, 2011 WL 4074622, at *3 (D. Nev. Sept. 12, 2011) (same); *Guardado v. McDaniel*, No. 3:10-CV-00079-RCJ-VPC, 2011 WL 3204714, at *3 (D. Nev. July 26, 2011) (same); *Ingebretsen v. Palmer*, No. 3:07-CV-00251-LRH (RAM), 2010 WL 3782052, at *1 (D. Nev. Sept. 22, 2010) (same).

[9] As discussed above, "neither Arizona case law nor statutes hold that issues are waived in post-conviction proceedings if they are raised only in an appendix to a petition for review." *Scott*, 567 F.3d at 582 n.8. Thus, this court found Scott's case "indistinguishable from *Insyxiengmay*, which held that presentation of an issue in an appendix is sufficient to present the issue in a full and fair manner to the state courts." *Id.* at 582.

15

*Scott* and *Insyxiengmay* and stating that "Nevada does not allow such a practice").

Nevada's procedural rule required Emanuel to argue the merits of Grounds 1, 2.1, and 2.2 in his Fast Track Statement to meet the exhaustion requirement.[10]

Finally, the Fast Track Statement directed the Nevada Court of Appeals to *specific* claims about Nelson's ineffectiveness. These claims did not include Grounds 1, 2.1, or 2.2, which Emanuel did not reference. Thus, the concurrence's approach would expand the so-called "appendix rule" by allowing a petitioner to first state specific claims in the state habeas appellate briefs, and then later in federal habeas proceedings to point to other claims (via appendix) that were made at the state habeas trial level but not argued on state habeas appeal. This would defy the fundamental rule of exhaustion that petitioners must "invok[e] one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

---

[10] The concurrence argues that Rule 28(e)(2) does not bar us from considering the appendix because "Emanuel did not use his petition 'for the arguments on the merits of the appeal.'" Concurrence at 5. But the concurrence repeats the majority's erroneous position that Emanuel only "argued to the Nevada Court of Appeals that the state district court had prevented him from developing the three ineffective assistance of counsel claims in his habeas petition." *Id.* For the reasons stated in Part I of this dissent, I disagree. Emanuel did seek to raise arguments on the merits of some of his ineffective assistance of counsel claims in his Fast Track Statement, and now attempts to use the habeas petition attached in the appendix to argue that claims beyond those presented in the Fast Track Statement were exhausted.

16